936 F.2d 656
 NATIONAL FOODS, INC., Plaintiff,
v.
Schulem RUBIN, individually and as Director of the Kosher
Law Enforcement Division of the Department of
Agriculture and Markets of the State of
New York, Defendant.
ROSENMAN & COLIN, ESQUIRE, Appellant,
v.
STATE OF NEW YORK, Appellee.
 No. 1434, Docket 91-7084.
 United States Court of Appeals,
Second Circuit.
 Argued April 29, 1991.
Decided June 12, 1991.
 
 1
 Gerald Walpin, Diane Da Cunha, Rosenman & Colin, New York City, for appellant.
 
 
 2
 Barrie L. Goldstein, Asst. Atty. Gen., and Litigation Counsel (Robert Abrams, Atty. Gen. of the State of N.Y., Lawrence S. Kahn, Deputy Sol. Gen., on the brief), New York City, for appellee.
 
 
 3
 Before OAKES, Chief Judge, WINTER, Circuit Judge, and MUKASEY,* District Judge.
 
 MUKASEY, District Judge:
 
 4
 This appeal raises the issue of whether the Eleventh Amendment prohibits a law firm that represented a state employee in federal court pursuant to New York Public Officers Law Sec. 17 (McKinney 1988 & Supp.1991) from moving in that federal court for additional fees to be paid by the State. We conclude for the reasons spelled out below that it does not, and accordingly vacate the District Court's order, 752 F.Supp. 178, denying the firm's motion on Eleventh Amendment grounds, and remand for further proceedings consistent with this opinion.I.
 
 
 5
 The facts, so far as they relate to the question before us, are undisputed. The underlying lawsuit consisted of a claim under 42 U.S.C. Sec. 1983 by National Foods, Inc. that Rabbi Schulem Rubin, in his capacity as New York State's Director of the Kosher Law Enforcement Division of the Department of Agriculture and Markets, had retaliated against that company for moving its plant from Maspeth, Queens to Indianapolis, Indiana. The retaliation allegedly took the form of a campaign to cast doubt on whether plaintiff's products, sold under the name Hebrew National, were really kosher--conduct said to have deprived the company of its civil rights.
 
 
 6
 After process was served, the New York State Attorney General perceived a potential conflict of interest if he were to represent Rubin. Therefore, acting pursuant to Sec. 17(2)(b) of New York's Public Officers Law, he certified that Rubin was entitled to be represented by private counsel. Thereafter, in late May 1989, Rubin sought to retain the Rosenman & Colin firm, appellants here. From subsequent conversations and correspondence between the firm and the Attorney General's office, it appears that the New York State Comptroller adheres to a state-wide schedule setting maximum fees for private lawyers retained to represent public officials under the Public Officers Law, that the Comptroller may agree to pay more in appropriate cases, and that he did agree, as set forth in a letter dated June 9, 1989 from the Attorney General to the firm, to pay somewhat more to Rosenman & Colin in this case, although not as much as the firm had asked. That letter has been referred to but has not been included in the record.
 
 
 7
 The firm proceeded to represent Rubin in the underlying action, and prevailed in his behalf; the complaint, amended once, was dismissed, and the appeal from that dismissal was withdrawn. The parties dispute the terms on which Rosenman & Colin represented Rubin. The firm contends that it proceeded on the basis of an "interim" agreement, concurred in by the Attorney General, that the firm would be paid at least at the rate specified in the June 9 letter referred to above but could move later to increase that rate. The Attorney General denies that he so agreed, and contends that the June 9 letter set forth the State's final position as to the rate of compensation that would be paid.
 
 
 8
 After the underlying action was dismissed, the firm moved before the District Court to increase its rate of compensation from $175 and $135 per hour for partners' and associates' time, respectively, to $388.33 and $211.21, respectively. The State opposed the motion on a variety of grounds, including (i) that the motion was barred by the four-month limitations period applicable to proceedings under Article 78 of New York's Civil Practice Law and Rules ("CPLR"), CPLR Sec. 217, (ii) that the decision to compensate the firm at the modified rate could not be overturned unless it was arbitrary and capricious, and it was neither, and (iii) that the motion was barred by the Eleventh Amendment.
 
 
 9
 The District Court denied the motion, holding that Sec. 17(2)(b) of the Public Officers Law did not "specify the State's intention to subject itself to suit in federal court," Atascadero State Hospital v. Scanlon, 473 U.S. 234, 241, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985) (emphasis in original), and that the motion therefore was barred by the Eleventh Amendment, which prevents a state from being sued in federal court without its consent. The Court did not treat the State's other defenses.
 
 II.
 
 10
 The Eleventh Amendment[1] has been interpreted to render states absolutely immune from suit in federal court unless they have consented to be sued in that forum or unless Congress has overridden that immunity by statute.[2] Russell v. Dunston, 896 F.2d 664, 667 (2d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990). A federal court will find that that immunity has been waived "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974), quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). Not only must the state be found clearly to have subjected itself to suit, but it must also be found to have subjected itself to suit "in federal court." Atascadero State Hospital v. Scanlon, supra, 473 U.S. at 241, 105 S.Ct. at 3146 (emphasis in original).
 
 
 11
 The statute in question here, Sec. 17 of New York's Public Officers Law, obligates the State to "provide for the defense of [a public] employee in any civil action or proceeding in any state or federal court" when the action arises out of an act or omission alleged to have occurred in the course of the employee's duties or is brought pursuant to 42 U.S.C. Sec. 1983. N.Y.Pub.Off.Law Sec. 17(2)(a) (McKinney 1988). The next paragraph of the same section gives the employee the right to be represented by the Attorney General,
 
 
 12
 "provided, however, that the employee shall be entitled to representation by private counsel of his choice in any civil judicial proceeding whenever the attorney general determines ... that representation by the attorney general would be inappropriate, or whenever a court of competent jurisdiction, upon appropriate motion or by a special proceeding, determines that a conflict of interest exists and that the employee is entitled to be represented by private counsel of his choice.... The attorney general may require ... that appropriate groups of such employees be represented by the same counsel."
 
 
 13
 Later in that paragraph is a sentence directing what shall be done in the event of a dispute as to multiple party representation or as to the fees to be paid to private counsel:
 
 
 14
 "Any dispute with respect to representation of multiple employees by a single counsel or the amount of litigation expenses or the reasonableness of attorneys' fees shall be resolved by the court upon motion or by way of a special proceeding."
 
 
 15
 N.Y.Pub.Off.Law Sec. 17(2)(b) (McKinney 1988).
 
 
 16
 The District Court found that it is possible reasonably to interpret the last quoted sentence of the statute as requiring a motion when the underlying case is in a state court, and a special proceeding in state court pursuant to Article 78 of the CPLR when the underlying case is in a federal court, thereby preserving the state's right to litigate the amount of attorneys' fees in a state court. Therefore, the Court reasoned, the statute did not articulate clearly enough the state's willingness to have its liability for attorneys' fees determined in a federal court.
 
 
 17
 As a member of this panel wrote when interpreting the statute that provides the same protection for municipal employees as does the statute at issue here for State employees, "Our interpretation of the statute begins with the language itself, Touche Ross & Co. v. Redington, 442 U.S. 560, 568, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979), and the rule that that language will be controlling when its context makes its meaning sufficiently clear, Ernst & Ernst v. Hochfelder, 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976)." Hassan v. Fraccola, 851 F.2d 602, 604 (2d Cir.1988) (interpreting N.Y.Public Officers Law Sec. 18(3)(a) (McKinney 1988)).
 
 
 18
 Applying those principles, our reading of the statute differs from the District Court's. First, the language of the statute, although perhaps not emphatic, is clear enough. Sub-paragraph (a) of the relevant section obligates the State to provide a defense for its employees in "any state or federal court." The next sub-paragraph then refers in general terms to "a court of competent jurisdiction" as the forum in which to determine whether private counsel is necessary, followed four sentences later by a reference, using the definite article, to "the court." Absent some reason to conclude otherwise, and we see none, "the court" referred to the second time in sub-paragraph (b) should be the same one referred to the first time--a "court of competent jurisdiction" empowered to determine when there exists between litigants a conflict of interest which necessitates separate representation. That determination lies within the inherent power of the court where the litigation is pending, Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir.1975); In re Michaelson, 511 F.2d 882, 888-89 (9th Cir.), cert. denied, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975)--the "state or federal court" in which the prior paragraph obligates the State to provide a defense--and necessarily must be made by that court.
 
 
 19
 The sentence granting to "the court" the power to resolve "[a]ny dispute" as to the "amount of litigation expenses or the reasonableness of attorneys' fees" grants also to "the court"--here unquestionably the same court because it is the one referred to in the same words of the same sentence--the power to resolve "[a]ny dispute with respect to representation of multiple employees by a single counsel." Such a dispute also is one that must be resolved by the court where the case is pending. Michaelson, supra. In fact, the State has conceded in its brief that the court where the underlying dispute is pending has inherent authority to resolve conflict of interest issues such as those referred to in the statute. (Appellee's Br. p. 12) Thus, it seems apparent to us that in Sec. 17(2)(b) of the Public Officers Law, the New York State Legislature acknowledged that the court where litigation is pending, whether state or federal, is the court where all issues of conflict of interest between litigants necessitating separate representation, of joint representation, and of the worth of legal services should be resolved.
 
 
 20
 Indeed, we think it is unreasonable to conclude that the Legislature intended anything else. Here it may be helpful to consider the larger setting of the statute. Section 17 provides for both defense and indemnification of state employees sued individually in their official capacity. The indemnification extends to damage awards, subject only to a determination that the damages arise from official conduct and that that conduct does not constitute "intentional wrongdoing on the part of the employee." N.Y.Pub.Off.Law Sec. 17(3)(a) (McKinney 1988). Thus the State has agreed to pay for damages awarded in federal courts. It appears unlikely that the State, having agreed to pay the cost of damage awards assessed in federal courts, would then draw the line and stand on its sovereignty when it came to determining the reasonableness of attorneys' fees. The interpretation urged by the State seems particularly unreasonable when one considers that a state court called upon to assess the worth of legal services in a federal case would have no familiarity with that case, and that the cost of the time and effort necessary to place all relevant facts before the state court could well exceed the amount in dispute. When we interpret a statute, we should avoid such unreasonable results if we can. United States v. Turkette, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981).
 
 
 21
 Nor do we think that this reading of the statute is subject to the criticism that if disputes over multiple representation may be resolved by motion in either a federal court or a state court, the reference in the statute to a special proceeding would then become superfluous, in violation of another accepted canon of construction requiring that a statute be construed, if possible, to give effect to all of its provisions. Allen Oil Co. v. Commissioner, 614 F.2d 336, 339 (2d Cir.1980). If a dispute arises as to a potential conflict of interest when litigation is imminent but has not actually begun, or as to compensation either before litigation has begun or after it has ended, a special proceeding might be the only available way to resolve it. Thus the reference in the statute to a special proceeding would remain meaningful.
 
 
 22
 In Fraccola, supra, we held that Sec. 18 of the Public Officers Law could be applied by a federal court to compel a municipality to defend its employee sued, as was Rubin in our case, under 42 U.S.C. Sec. 1983 (1982). The State would distinguish Fraccola as involving a municipality rather than a state, and therefore raising no Eleventh Amendment issue. Monell v. Dep't. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). That is true, but Sections 17 and 18 provide the same kind of protection, the one to State employees the other to municipal employees, and are similarly if not identically worded. Fraccola, 851 F.2d at 604. Simply as a matter of statutory construction, the differences provide no basis for concluding that the Legislature intended to permit federal courts to apply Sec. 18 while requiring that Sec. 17 be applied only in state courts.
 
 III.
 
 23
 Considering both text and context, it appears from the " 'express language' " of Sec. 17, and from " 'such overwhelming implications from the text as [will] leave no room for any other reasonable construction,' " Edelman v. Jordan, supra, that the Eleventh Amendment does not bar the firm's motion. Therefore, we vacate the District Court's order denying the firm's motion, and remand for proceedings consistent with this opinion. It bears mention that in so remanding the case, we express no view on the standard applicable to a review of the Comptroller's decision, whether the firm's motion is in the nature of a special proceeding under Article 78 of the CPLR, if so whether it is governed by a four-month limitations period, and if so whether there was sufficient ambiguity about the finality of the Comptroller's decision on a reasonable fee scale as to justify disregarding that limitations period. Castaways Motel v. Schuyler, 24 N.Y.2d 120, 126-27, 247 N.E.2d 124, 299 N.Y.S.2d 148, reargument granted, 25 N.Y.2d 891, 251 N.E.2d 148, 304 N.Y.S.2d 10, decision adhered to, 25 N.Y.2d 692, 254 N.E.2d 919, 306 N.Y.S.2d 692 (1969). Those issues were not decided by the District Court, were more flagged than argued on this appeal, and in any event cannot be decided on the record before us.
 
 
 
 *
 The Honorable Michael B. Mukasey, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
 
 
 [2]
 Although the language of the Amendment deals only with suits "against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," and thus would not reach our case if Rubin is a citizen of New York, it has been interpreted at least since Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) to convey a broad grant of sovereign immunity to the states, an interpretation that has been the subject of lively debate in the Supreme Court. E.g., Pennsylvania v. Union Gas Co., 491 U.S. 1, 109 S.Ct. 2273, 2296-99, 105 L.Ed.2d 1 (1989) (Scalia, J., concurring in part and dissenting in part); Atascadero State Hospital v. Scanlon, supra, 473 U.S. at 247-302, 105 S.Ct. at 3149-3178 (Brennan, J. dissenting). Despite the debate, that interpretation remains unchanged