**Ruby Birt SHERWOOD, Plaintiff,**

v.

**OLIN CORPORATION, Defendant.**

**No. 90 Civ. 1294 (MBM).**

United States District Court,
S.D. New York.

Sept. 4, 1991.

Robert D. Goodstein, Goodstein & West, New Rochelle, N.Y., for plaintiff.

Michael R. Zeller, Epstein Becker & Green, Stamford, Conn., Judith A. Gordon, Asst. Atty. Gen., State of N.Y., Dept. of Law, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Ruby Birt Sherwood, a New York resident, sues her former employer, defendant Olin Corporation, a Virginia Corporation for allegedly violating the New York State Human Rights Law ("HRL"), N.Y.Exec.L. §§ 290–301 (McKinney's 1982 & Supp.) by discriminating against her on account of race and sex. Sherwood seeks damages pursuant to HRL § 297(9) which provides victims of discrimination with a private civil remedy. While employed by Olin, Sherwood was assigned to the company's corporate headquarters in Connecticut. Defendant moves for summary judgment on the ground that § 298–a, which applies the HRL to acts committed outside New York, is unconstitutional to the extent it regulates out-of-state conduct by foreign corporations such as Olin. Defendant's motion is denied. As set forth more fully below, it is unnecessary to address the constitutionality of § 298–a because that section does not authorize private civil actions against foreign corporations. However, because Sherwood fails to state a claim with respect to Olin's out-of-state conduct, the complaint must be dismissed unless she can amend it to allege discriminatory acts within New York.

### I.

Sherwood, a black female, was hired by Olin Corporation on January 23, 1984 as an attorney in the legal department of Olin's Chemical Group. Sherwood is licensed to practice law in New York only and at all relevant times has been a resident of New York State. (Sherwood Aff. ¶¶ 2, 3; Compl. ¶ 4). Throughout her employment, Sherwood was stationed at Olin's corporate headquarters in Stamford, Connecticut, but performed certain work within New York State, including the negotiation of Olin's acquisition of Hi–Pure Chemicals Inc., and also served as counsel to Olin's factory in Rochester, New York. (Sherwood Aff. ¶¶ 7–13). Olin is a Virginia Corporation having its principal place of business in Connecticut. (Petition for Removal ¶ 4). Subject-matter jurisdiction is based on diversity of citizenship.

Sherwood alleges that she was denied promotions or bonuses and received smaller salary increases than similarly situated white male employees because of her race and/or sex. (Compl. ¶¶ 6–12). She alleges also that Olin retaliated against her with respect to the terms and conditions of employment after she complained to Olin management about discrimination. (Id. ¶ 14–15). Sherwood resigned her position on September 2, 1988. (Id. ¶ 17).

Sherwood initially filed an administrative complaint with the Connecticut Commission on Human Rights and Opportunities (CCHRO) on February 22, 1989. (Sherwood Aff. ¶ 15). On February 7, 1990, she sued Olin in New York State Supreme Court for alleged violating HRL § 296.[1] (Petition for Removal ¶ 1). Her suit, which seeks $5 million in damages, is based on HRL § 297(9), which provides a private right of action to persons claiming to be aggrieved by an unlawful discriminatory practice.[2] Olin removed the action to this Court on February 27. On November 11, 1990, Sherwood voluntarily withdrew her complaint filed with CCHRO. (*See* Exhibit to Plaintiff's May 30, 1991 Letter to Court).

## II.

Olin's summary judgment motion assumes that Sherwood complains of alleged discrimination that occurred totally within the borders of Connecticut. That assumption is reasonable because although Sherwood performed some work "physically within the State of New York" (Sherwood Aff. ¶ 9), she was stationed at Olin's Stamford headquarters throughout her career with the company, and that appears to be the location where all decisions bearing on her employment were made. Although New York's Human Rights Law originally regulated conduct occurring within the state only, the Law was amended in 1975 to apply to acts committed outside New York. *See Iwankow v. Mobil Corp.*, 150 A.D.2d 272, 541 N.Y.S.2d 428, 429 (1st Dep't 1989). The amendment extending the HRL to out-of-state acts is set forth in § 298–a. In full, that section states:

*Application of article to certain acts committed outside the state of New York*

1. The provisions of this article shall apply as hereinafter provided to an act committed outside this state against a resident of this state or against a corporation organized under the laws of this state or authorized to do business in this state, if such act would constitute an unlawful discriminatory practice if committed within this state.

2. If a resident person or domestic corporation violates any provision of this article by virtue of the provisions of this section this article shall apply to such person or corporation in the same manner and to the same extent as such provision would have applied had such act been committed within this state except that the penal provisions of such article shall not be applicable.

3. If a non-resident person or foreign corporation violates any provision of this article by virtue of the provisions of this section, such person or corporation shall be prohibited from transacting any business within this state. Except as otherwise provided in this subdivision, the provisions of [§ 297] of this chapter governing the procedures for determining and processing unlawful discriminatory practices shall apply to violations defined by

---

**1.** New York Human Rights Law § 296 provides in relevant part:

    1. It shall be an unlawful discriminatory practice:

    (a) For an employer ... because of the race ... color, ... [or] sex ... of any individual, ... to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

    . . . .

    (e) For any employer ... to discharge ... or otherwise discriminate against any person because he has opposed any practices forbidden under this article....

**2.** Section 297(9) provides in relevant part that:

    9. Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appro-

priate jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint [with the New York State Division of Human Rights ("NYSDHR") ] or with any local commission on human rights ..., provided that where the [NYSDHR] has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed. No person who has initiated any action in a court of competent jurisdiction or who has an action pending before any administrative agency under any other law of the state based upon an act which would be an unlawful discriminatory practice under this article, may file a complaint with respect to the same grievance under this section....

this subdivision insofar as such provisions are or can be made applicable. If the division of human rights has reason to believe that a non-resident person or foreign corporation has committed or is about to commit outside of this state an act which if committed within this state would constitute an unlawful discriminatory practice and that such act is in violation of any provision of this article by virtue of the provisions of this section, it shall serve a copy of the complaint upon such person or corporation by personal service either within or without the state or by registered mail, return receipt requested, directed to such person or corporation at his or its last known place of residence or business, together with a notice requiring such person or corporation to appear at a hearing, specifying the time and place thereof, and to show cause why a cease and desist order should not be issued against such person or corporation. If such person or corporation shall fail to appear at such hearing or does not show sufficient cause why such order should not be issued, the division shall cause to be issued and served upon such person or corporation an order to cease or desist from the act or acts complained of. Failure to comply with any such order shall be followed by the issuance by the division of an order prohibiting such person or corporation from transacting any business within this state. A person or corporation who or which transacts business in this state in violation of any such order is guilty of a class A misdemeanor. Any order issued pursuant to this subdivision may be vacated by the division upon satisfactory proof of compliance with such order. All orders issued pursuant to this subdivision shall be subject to judicial review in the manner prescribed by [CPLR Article 78].

When plaintiff brought suit, defendant apparently believed that § 298–a allowed New York residents to bring private civil actions under § 297(9) with respect to discriminatory acts committed outside New York state by foreign corporations. Accordingly, defendant moved for summary judgment on the ground that § 298–a is unconstitutional under the Commerce and Full Faith and Credit Clauses to the extent it provides such a private civil action.

Pursuant to 28 U.S.C. § 2403(b), which provides for the intervention of the state attorney general in any action challenging the constitutionality of a state statute, the Court asked the New York Attorney General to address the constitutional issues presented by defendant. The Attorney General argues that § 298–a does not provide claimants with a private civil remedy for out-of-state discrimination by foreign corporations. Rather, the only remedy for victims of such discrimination is to file an administrative complaint with the New York State Division of Human Rights ("NYSDHR"). The NYSDHR then issues an order for the non-resident person or foreign corporation to cease and desist from the discriminatory conduct. If the defendant fails to cease and desist, the NYSDHR can then issue an order prohibiting the defendant from transacting business within the state.

For the reasons set forth below, the Attorney General's construction is correct: § 298–a does not provide claimants with a private civil remedy for out-of-state discrimination by foreign corporations such as Olin. Because defendant's constitutional challenge is premised on the existence of such a remedy, its motion for summary judgment must be denied.

### III.

■ No court has discussed whether § 298–a allows residents to bring private civil actions for out-of-state acts committed by foreign persons or corporations. In *Iwankow,* 150 A.D.2d at 274, 541 N.Y.S.2d at 429, the First Department held that § 298–a did not provide a *non-resident* with a private civil action for out-of-state acts of discrimination by a *domestic corporation,* and observed that "absent an allegation that a discriminatory act was committed in New York or that a New York State resident was discriminated against, New York's courts have no subject matter jurisdiction over the alleged wrong." *See*

*also Matter of Walston & Co., Inc. v. New York City Commission on Human Rights,* 41 A.D.2d 238, 241, 342 N.Y.S.2d 459 (1st Dep't 1973) (HRL applies to all discrimination occurring *within New York*—even discrimination against non-residents). However, the *Iwankow* Court did not discuss whether a resident can maintain a private civil action for out-of-state discrimination by a *foreign corporation*—the question presented here. A resolution of that question turns on construction of the statute.

When construing a state statute, a court "begins with the language itself and the rule that that language will be controlling when its context makes it sufficiently clear." *Hassan v. Fraccola,* 851 F.2d 602, 604 (2d Cir.1988) (*interpreting* N.Y. Public Officers Law § 18(3)(a)) (*citing Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979) and *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976)). *See also National Foods, Inc. v. Rubin,* 936 F.2d 656, 659–60 (2d Cir.1991).

The language and structure of § 298–a demonstrate that the private civil remedy provided by § 297(9) is available to resident victims of out-of-state discrimination only when that discrimination is committed by a resident person or domestic corporation. Subdivision (1) of § 298–a provides that when a resident or domestic corporation suffers discrimination outside the state, "[t]he provisions of this article shall apply as hereinafter provided." "[H]ereinafter provided" means, apparently, what is provided by subdivisions (2) and (3) of the statute. Thus, the only remedies available to victims of out-of-state discrimination are those provided in subdivisions (2) and (3) of § 298–a. "This article" is Article 15 of the New York State Executive Law which includes the entire State Human Rights Law. *See* Executive Law § 290.1 ("[t]his article shall be known as the 'Human Rights Law'").

Subdivision (2) applies the HRL to out-of-state discrimination by "resident person[s] or domestic corporation[s]." That subdivision provides that "this article *shall apply* in the same manner and to the same extent such provisions *would have applied*" had such discrimination occurred within the state. (emphasis added) Thus, when a resident person or domestic corporation is alleged to have discriminated, the entire HRL—including the provision for a private civil remedy in § 297(9)—is applicable, notwithstanding that the discrimination occurred out of state.

Subdivision (3) applies the HRL to out-of-state discrimination by "non-resident person[s] or foreign corporation[s]," as follows: First, "[e]xcept as otherwise provided in this subdivision, the provisions of [§ 297] ... governing the procedure for determining and processing unlawful discriminatory practices shall apply to [out-of-state acts that would be considered discriminatory if committed within the state] insofar as such provisions are or can be made applicable." The rest of the subdivision then states that if the NYSDHR believes a non-resident person or foreign corporation has discriminated or is about to discriminate in the near future, the agency "shall" serve a complaint requiring the person to appear at a hearing to show cause why a cease and desist order should not be issued. If the defendant fails to appear or fails to show cause why the order should not be issued, the NYSDHR "shall" issue the cease and desist order. If a person fails to comply with the cease and desist order, the NYSDHR must prohibit the person from transacting any business within the state. Violation of that second order constitutes a criminal misdemeanor. Finally, the last two sentences of the subdivision provide that "[a]ny order issued pursuant to this subdivision" may be vacated by the NYSDHR upon proof of compliance and that "[a]ll orders issued pursuant to this subdivision" are subject to Article 78 Review. These provisions of the third subdivision demonstrate that a resident's only remedy for out-of-state discrimination by a non-resident person or foreign corporation is an order by the NYSDHR directing the non-resident person or foreign corporation to cease and desist from the acts complained of or be prohibited from transact-

ing business within the state; the private civil action provided by § 297(9) is not available.

Plaintiff's principal challenge to that interpretation is the argument that the reference—in the second sentence of § 298–a(3)—to "the provisions of [§ 297] ... governing the procedure for determining and processing unlawful discriminatory practices" includes the private civil action provided by § 297(9). Essentially, plaintiff contends that the private civil action provided by § 297(9) is such a "procedure ..." That construction of the statute is unreasonable.

The first eight subdivisions of § 297 present the procedures for determining and processing the administrative remedy for discrimination.[3] The ninth subdivision provides an alternative private civil remedy. Even though all of § 297 is entitled "[p]rocedure," well-settled principles of statutory interpretation do not permit me to read that word in the second sentence of § 298–a(3) to include the private civil action provided by § 297(9). If the Legislature had intended to apply all parts of § 297 "[e]xcept as otherwise provided in this subdivision" and "insofar as such provisions are or can be made applicable," including the private civil action, to out-of-state discrimination by non-residents, the reference to those "provisions of [§ 297] *governing the procedure for determining and processing unlawful discriminatory practices*" would be superfluous; if all of § 297 applies, there is no need to identify a particular feature of that section—"governing the procedure for determining and processing unlawful discriminatory practices." Rather, the drafters need only have referred to § 297—period. That they went further and used the above emphasized language suggests they intended to apply only certain provisions of § 297, but not others. *See Rubin,* 936 F.2d at 661 (applying canon of construction requiring a statute to be construed, if possible, so as to give effect to all its provisions); *Allen Oil Co. v. Commissioner,* 614 F.2d 336, 339 (2d Cir.1980) (same). For that emphasized language in the second sentence of § 298–a(3) to have any independent meaning, the sentence must incorporate only those parts of § 297 that present the *administrative* procedures for determining and processing complaints before the NYSDHR—and not that part of § 297 which provides for a private civil action before a "court of appropriate jurisdiction."

Every subsequent sentence in § 298–a(3) speaks in language that refers to an administrative proceeding before the NYSDHR. Thus, the third sentence states that if the NYSDHR believes that a non-resident person or foreign corporation has discriminated or will discriminate against a resident, the agency must serve a complaint requiring that person or corporation to attend a hearing and show cause why a cease and desist order should not be issued, the fourth sentence states that the NYSDHR must issue the cease and desist order if the non-resident person or foreign corporation fails to appear or fails to show cause at the hearing, and the fifth sentence states that the NYSDHR must prohibit the non-resident person or foreign corporation from transacting business within the state if such person or entity fails to comply with the cease and desist order. Further, the sixth sentence states that anyone who transacts business within the state in violation of a NYSDHR order commits a misdemeanor, and the seventh and eighth sentences provide that all orders issued under § 298–a(3) may be vacated by the

---

**3.** Those procedures are the following: (1) a plaintiff files a complaint with the NYSDHR (§ 297(1)); (2) the NYSDHR determines whether it has jurisdiction and whether there is probable cause to believe that the defendant has engaged or is engaging in discrimination (§ 297(2)); (3) the NYSDHR attempts to reach a conciliation agreement with the defendant (§ 297(3)); (4) a public hearing is held before an examiner at the offices of the NYSDHR (§ 297(4)(a)(i)) and an order is issued by the State Commissioner of Human Rights (§ 297(4)(c)); (5) voluntary arbitration procedure may be applied, administered by the American Arbitration System (§ 297(4)(a)(ii)); (6) the NYSDHR moves for an injunction in state court in the event that a defendant violates the Commissioner's order (§ 297(6)); and (7) the NYSDHR monitors compliance with any order or conciliation agreement (§ 297(7)).

NYSDHR upon proof of compliance or reviewed by a court under CPLR Article 78.

The second sentence of § 298–a(3)—"Except as otherwise provided in this subdivision, the provisions of [§ 297] of this chapter governing the procedures for determining and processing unlawful discriminatory practices shall apply to violations defined by this subdivision insofar as such provisions are or can be made applicable"—applies to charges of out-of-state discrimination the same administrative procedures used to deal with charges of in-state discrimination. One must strain the meaning of the words "procedure," "determining," and "processing"—and ignore the rest of § 298–a(3)—to describe a private civil action as a "procedure for determining and processing unlawful discriminatory practices."

The New York State Legislature was capable of expressing clearly its intent to extend the private civil remedy provided by § 297(9) to resident victims of out-of-state discrimination when it wished to do so. In § 298–a(2), the Legislature did so express that intent by applying the entire human rights article to cases of discrimination by "resident person[s] or domestic corporation[s]." The Legislature's failure to act with equal clarity—in the next subdivision—to extend the private civil remedy to discrimination by "non-resident person[s] or foreign corporation[s]" demonstrates that that remedy is not available against those persons or entities.

This reading of the second sentence of § 298–a(3) is consistent with the rest of the subdivision. As mentioned, the penultimate sentence of § 298–a(3) provides that "*[a]ny* order issued pursuant to this subdivision may be vacated by the division upon satisfactory proof of compliance with such order." (emphasis added) For actions brought in state court, the "court of appropriate jurisdiction" under § 297(9) is the state's Supreme Court. *See* N.Y.Const. Art. 6, § 6. Obviously, unless § 298–a(3) of the HRL undoes basic principles of judicial review and separation of powers, an order issued by the state Supreme Court in a private civil action under § 297(9) is not the kind of order that "may be vacated" by an administrative agency. Moreover, the last sentence of the subdivision provides that "[a]ll orders issued pursuant to this subdivision shall be subject to judicial review in the manner prescribed by [CPLR Article 78]." Article 78 is directed principally at the acts of administrative agencies, *see* D. Siegel, *New York Practice* § 557 at 870 (1991), and proceedings under that article are begun in Supreme Court. CPLR § 7804(b). Although orders by the State Supreme Court are not specifically excluded from the coverage of Article 78, *see* CPLR § 7802(a) (defining "body or officer" to "include[ ] every court, tribunal [or] board"), it does not make sense that orders relating to private civil actions under HRL § 297(9) would be reviewable by the same court that issued them, nor does it make sense for private civil actions against non-residents under § 298–a(3), but not private civil actions against residents under § 298–a(2), to be subject to Article 78 review. When interpreting statutes, courts should seek to avoid unreasonable results. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Rubin*, 936 F.2d at 660. The only sensible explanation for the reference to Article 78 review of "[a]ll orders issued pursuant to this subdivision" is that the only kind of order contemplated by those who drafted § 298–a(3) is an order issued by the NYSDHR directing a non-resident defendant to cease and desist from discrimination, or to cease transacting business within the state.

Plaintiff's reading of § 298–a(3) would create an anomaly within that section. Under plaintiff's reading, a claimant against a non-resident or foreign corporation under § 298–a(3) has all of the remedies in § 297 plus the right to a NYSDHR order prohibiting the violator from transacting any business within the state. However, the claimant against a resident person or domestic corporation under § 298–a(2) has only the remedies in § 297. It is difficult to believe that the Legislature intended to provide its residents with more remedies in the case of out-of-state discrimination by non-residents than in the case of out-of-state discrimina-

tion by residents who are more readily subject to the state's jurisdiction and police powers.

Finally, although the legislative history of § 298–a does not precisely address the issue, a letter from Assembly Speaker Steingut to Governor Carey seems to confirm that a private civil remedy was not intended to be available to victims of out-of-state discrimination by non-residents. In that letter, which accompanied the bill that later became § 298–a, the Speaker wrote that "[i]f a New York resident or domestic corporation violates [the HRL], the same sanction shall apply as if the act was committed within New York State." Here, the reference to "same sanction" includes the private civil remedy provided by § 297(9). However, with respect to discrimination by non-residents, the letter did not mention the availability of the "same sanction." Rather, the next sentence stated, "[i]f the discriminatory act against the New York resident outside the State is committed by a non-resident or a foreign corporation, the sanction which may be imposed by the Division of Human Rights is an order prohibiting the non-resident person of foreign corporation from doing business in this State." (*See* Letter accompanying A.I. 7640–B from Steingut to Carey (included within Exhibits to Opening Brief Submitted by Attorney General)) Although that language does not unequivocally exclude a private civil action, the contrast between that passage and the prior one—describing the sanction against residents and domestic corporations who commit out-of-state discrimination—shows that the Assembly Speaker viewed an order from the NYSDHR as the only remedy available to victims of out-of-state discrimination by non-resident persons and foreign corporations such as Olin.

In conclusion, the private civil remedy provided by § 297(9) is not available to those who allege out-of-state discrimination by a non-resident person or a foreign corporation. Therefore, that remedy is unavailable to Sherwood with respect to any alleged discrimination by Olin that occurred in Connecticut. Because Sherwood may not sue Olin for the company's out-of-state

conduct and because the NYSDHR has not filed or threatened to file an administrative complaint, defendant lacks standing to object to the constitutionality of applying the New York State Human Rights Law to that conduct. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471–73, 102 S.Ct. 752, 757–59, 70 L.Ed.2d 700 (1982) (to establish Article III standing, a party must " 'show that he personally has suffered some actual or threatened injury as a result of the putative illegal conduct of the defendant' ") (*quoting Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 16, 60 L.Ed.2d 66 (1979)). Accordingly, Olin's motion for summary judgment is denied.

■ Although Sherwood has won the battle by defeating Olin's summary judgment motion, she may have lost the war. Because she cannot sue with respect to discrimination which occurred in Connecticut, her claim may have to be dismissed. As mentioned, plaintiff asserts in her affidavit opposing defendant's summary judgment motion, but not in her complaint, that she performed some work for Olin within New York State. It is unclear whether those allegations were made solely to defeat Olin's constitutional challenge, *see, e.g., Allstate Insurance Co. v. Hague,* 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981) ("for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law in neither arbitrary or fundamentally unfair"), or whether they also provide a basis for alleging discriminatory acts by Olin within the borders of New York state.

The entire Human Rights Law, including § 297(9), applies to any claimed discriminatory practice by Olin that occurred within New York, even though Olin is a foreign corporation. *See U.S. Power Squadrons v. State Hum. Rts. Appeal Bd.,* 59 N.Y.2d 401, 415, 465 N.Y.S.2d 871, 878, 452 N.E.2d 1199, 1206 (1983). In order to allege discrimination within New York, Sherwood

must allege more than her New York residence; she must allege that an unlawful discriminatory practice "originated" within New York state, *Iwankow,* 150 A.D.2d at 274, 541 N.Y.S.2d at 429, that a discriminatory practice affected the "terms, conditions, or privileges of [her] employment" (§ 296(1)(a)) within New York, or that Olin retaliated against her because she complained about such discriminatory practices. §§ 296(1)(e), 296(3–a)(c); *see Walston,* 41 A.D.2d at 242, 342 N.Y.S.2d at 463 (reversing New York City Commission on Human Rights' assertion of jurisdiction over complaint by citizen of Illinois who alleged discrimination that may have occurred in Indiana, Illinois, or New York City because it was not clear from record "whether the alleged discriminatory acts occurred in New York or elsewhere").

Sherwood's current complaint does not specifically allege any discriminatory acts occurring within New York. Therefore, her complaint must be dismissed unless she can amend it to include good faith allegations of such acts. Unless she can state a claim under § 297(9), it is unnecessary to address an issue briefed by both parties and the Attorney General: whether Sherwood's complaint to the Connecticut Commission on Human Rights and Opportunities in February 1989 precludes a private civil action because that action is not available to plaintiffs who previously "filed a complaint [with the NYSDHR] or with *any local commission on human rights ...*" § 297(9) (emphasis added).

At this stage, it is sufficient to note that although the Attorney General and Sherwood take the position that the term "local commission on human rights" refers only to local commissions *within New York state,* no authority answers directly the question of whether filing a complaint with *another state's* human rights commission bars a later private civil remedy. *But cf., Scott v. Carter–Wallace, Inc.,* 147 A.D.2d 33, 541 N.Y.S.2d 780, 783 (1st Dep't), *appeal dismissed,* 75 N.Y.2d 764, 551 N.Y.S.2d 903, 551 N.E.2d 104 (1989) (holding that plaintiff who filed complaint with Equal Employment Opportunities Commis-

sion, which automatically refers complaint to NYSDHR, may not sue in state court and noting that a "grievant who files with the EEOC effectively elects, whether he realizes it or not, a federal judicial forum, and it is to that forum that the grievant should look for his remedies, including any state law remedies provided by the Human Rights Law").

Counsel will attend a conference on September 24, 1991 at 5:00 in Courtroom 219 to discuss the status of this case.

SO ORDERED.