In the Matter of WALSTON & Co., INC., Respondent, *v.* NEW YORK CITY COMMISSION ON HUMAN RIGHTS et al., Respondents. ESTHER O. KEGAN, Intervenor-Respondent-Appellant.

First Department, April 10, 1973.

*Esther O. Kegan* of counsel (*George Sassower* and *Doris L. Sassower* with her on the brief; *Sassower & Sassower,* attorneys), for intervenor-respondent-appellant.

*Kevin T. O'Reilly* of counsel (*Thomas A. Shaw, Jr.,* with him on the brief; *Breed, Abbott & Morgan,* attorneys), for respondent.

*Norman Redlich, Corporation Counsel* (*Stanley Buchsbaum, Beverly Gross* and *Patricia Manning Rodenhausen,* with him on the brief), for New York City Commission on Human Rights, *amicus curiae.*

*Henry Spitz* (*Alan J. Saks* and *Lawrence Kunin* with him on the brief), for State Division of Human Rights, *amicus curiae.*

STEVENS, P. J. This is an article 78 proceeding in which the respondent-intervenor, Esther O. Kegan, appeals from a judgment and order prohibiting respondent from holding a hearing with respect to a complaint charging discrimination on the basis of sex.

Kegan is a citizen and resident of Illinois and a partner in a law firm there. Since 1966, she has maintained a securities trading account with petitioner Walston & Co., Inc. In November, 1970, she was the owner of some 60 acres of orange groves in Florida. At that time Kegan requested petitioner's Gary, Indiana, office to open a commodities futures account in order to deal in orange juice futures. She was informed that petitioner did not handle commodity accounts for women. Kegan states that she was told that petitioner's executive committee would most likely make an exception for her because of her experience and standing. However, petitioner claims that because of Kegan's displeasure, the manager of the Gary office was asked to obtain approval for Kegan's account. The manager sent a wire to George Oberle of petitioner's Chicago office, the vice-president in charge of all of petitioner's commodity accounts in the nation. Since Oberle was on vacation, the Gary office was informed that the matter would be taken up on his return. The Gary office then sent three forms to Kegan, allegedly for use should the account be approved. They were (1) a commodity collateral letter, (2) a margin account agreement and (3) a

woman's commodity account form. On December 15, 1970, Kegan sent the first two documents to the petitioner's New York City office. She did not return the woman's commodity account form which contained a statement, "I will in no way hold Walston & Co., Inc. or any successors thereof, responsible for any losses which I might incur in my account with them through trading in commodities." She refused to sign the form because male applicants were not required to do so. When she received no reply to her application, Kegan, on December 28, 1970, wrote to petitioner's president in New York that she wanted to deal in orange juice concentrate futures. In January, 1971, when she had still received no reply, she telephoned New York and was informed that her application was refused because of her failure to sign the woman's commodity account form.

In July, 1971, Kegan filed a complaint with the New York City Commission on Human Rights charging discrimination on the basis of sex with a resulting loss of more than $100,000. On July 30, 1971, petitioner wrote the commission that it objected to the exercise of jurisdiction. On November 16, 1971, a conference on the jurisdictional issue was held at the commission's office. On December 9, 1971, another letter with respect to jurisdiction was sent by petitioner to the commission. On February 3, 1972, the commission issued a "Determination and Order After Investigation", in which it apparently stated that it had jurisdiction. The two letters objecting to jurisdiction and the "Determination and Order After Investigation" are not part of this record.

After its determination with respect to jurisdiction, the commission ordered a hearing on the complaint to be held on April 4, 1972. By notice dated March 24, 1972, petitioner moved pursuant to article 78 of the CPLR for a writ of prohibition against the holding of a hearing by the respondents. The trial court found for the petitioner.

There are three basic issues on this appeal. The first is whether the laws of discrimination apply only to residents of New York State. The second is whether the allegedly discriminatory acts occurred in New York so that the matter is properly cognizable by the New York City Commission on Human Rights. And the third is whether a writ of prohibition can be used to prevent a hearing.

With respect to the first issue, the courts below ruled, after finding that the State Human Rights Law applied only to inhabitants of the State, that "the City Commission is likewise limited to the protection of inhabitants of the city." The court relied

on subdivisions 2 and 3 of section 290 of the Executive Law and on section B1–1.0 of the Administrative Code of the City of New York. (General Municipal Law, § 239-s gives the City Commission on Human Rights concurrent jurisdiction with the State Commission over allegations of discrimination within New York City.) Subdivision 2 of section 290 states that the Human Rights Law is designed to protect "the people of this state." Subdivision 3 of section 290 states that the State's responsibility is to insure equal opportunity for every individual "within this state" and that discrimination threatens the rights of "its inhabitants." Section B1–1.0 of the Administrative Code of the City of New York states in part that, "the council hereby finds and declares that prejudice, intolerance, bigotry, and discrimination and disorder occasioned thereby threaten the rights and proper privileges of *its inhabitants* and menace the institutions and foundation of a free democratic state." (Emphasis supplied.)

Despite the seeming limitations of the foregoing provisions, the city and State laws on human rights clearly prohibit discrimination against nonresidents in New York City and New York State. Both subdivision 1 of section 297 of the Executive Law and section B1–8.0 of the Administrative Code of the City of New York provide that "any person" who is aggrieved may file a complaint with the appropriate commission. This includes persons who come into New York for business or social purposes and meet discrimination in public accommodations. Public accommodations include the services offered by petitioner since this is an establishment dealing in services to the public. (Administrative Code of the City of New York, § B1–2.0, subd. 9.)

As to the second issue, the record here is too incomplete to make an informed determination as to whether the commission has jurisdiction because the alleged acts of discrimination occurred in New York. Petitioner contends that the Gary office denied the request for an account. Kegan argues that her application was denied in New York City making the New York anti-discrimination statutes applicable. Neither the letters from petitioner to the City Commission on Human Rights objecting to jurisdiction, nor the "Determination and Order After Investigation" are a part of the record on appeal. The basis of the commission's assertion of jurisdiction is, therefore, not clear.

Thirdly, prohibition is an inappropriate remedy here. "Prohibition is an extraordinary remedy to be invoked only to restrain the exercise of an unauthorized jurisdiction and is not

available to prevent possible error which may be corrected on appeal.'' (*Matter of Greater N. Y. Corp. of Seventh Day Adventists* v. *Commission on Human Rights of City of N. Y.*, 27 N Y 2d 898.) In *Matter of South African Airways* v. *New York State Division of Human Rights* (64 Misc 2d 707), the respondent commission was prohibited from holding a hearing on allegations that the airline would not carry black passengers to South Africa since they would not be granted visas by the South African government. The court ruled that any relief would have to be granted against the foreign government over which the commission had no control. Here, the issue of jurisdiction is one of fact. It is not clear from the record whether the allegedly discriminatory acts occurred in New York or elsewhere. After a hearing, as ordered by the commission, the whole proceeding is subject to review and any jurisdictional error can be corrected.

The judgment insofar as appealed from should be reversed on the law and the petition dismissed with costs.

McGIVERN, J. (dissenting). I would affirm. The City Commission can lawfully have no jurisdiction to entertain at the request of a foreign domiciliary (Chicago, Illinois) a complaint with respect to an alleged discriminatory practice of a foreign located institution. The pertinent State and city antidiscrimination statutes were enacted to protect inhabitants of this State. The city's antidiscrimination statute, a violation of which has consequences penal in nature, cannot be given extraterritorial effect.

MARKEWICH, MURPHY and CAPOZZOLI, JJ., concur with STEVENS, P. J.; McGIVERN, J., dissents in opinion.

Judgment, Supreme Court, New York County, entered on June 20, 1972, so far as appealed from, reversed on the law, and the petition dismissed. Appellant shall recover of petitioner-respondent $60 costs and disbursements of this appeal.