**William S. HAMMELL, Plaintiff,**

v.

**BANQUE PARIBAS, Defendant.**

**No. 90 Civ. 4799 (JSM).**

United States District Court, S.D. New York.

Dec. 18, 1991.

---

Walter Meginniss, Gladstein, Reif & Meginniss, New York City, for Hammell.

Laura Hoguet, White & Case, New York City, for Banque Paribas.

## MEMORANDUM OPINION
## AND ORDER

MARTIN, District Judge:

Plaintiff commenced this action against his former employer, defendant Banque Paribas, seeking declaratory, injunctive and compensatory relief for defendant's alleged breach of contract and for alleged violations by defendant of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–2(a) *et seq.*; of the New York Human Rights Law, N.Y. Executive Law § 290 *et seq.*; and of the New York Labor Law § 198–c.

Defendant currently is moving the Court for partial summary judgment dismissing the following causes of action asserted in plaintiff's Amended Complaint:

1. Plaintiff's claim under New York Executive Law § 298–a (second cause of action) that defendants discriminated against plaintiff on the basis of national origin in the payment of bonuses and cost-of-living increases.

2. Plaintiff's claim under New York Labor Law § 198–c (seventh cause of action)

seeking cost-of-living increases and bonuses.[1]

3. Retaliation claims brought under Title VII (Third Cause of Action) and under the New York Executive Law (Fourth Cause of Action).

For the following reasons, the Court grants defendant's motion and dismisses these claims.

## BACKGROUND

Taking plaintiff's allegations as true, plaintiff, a white male, began working for defendant on or about March 3, 1980 in defendant's New York office. Defendant is a bank organized under French law with its principal office in Paris and branch offices in many cities, including Tokyo and New York.

On or about November 12, 1984, defendant offered plaintiff the opportunity to work in defendant's Tokyo branch as its Deputy General Manager. He agreed to the transfer, effective January 1, 1985, pursuant to the terms of a letter agreement (the "Agreement"). The Agreement stated that the transfer was to be for a three-year period subject to extensions as agreed to by the parties. At the conclusion of the assignment plaintiff was to be reintegrated into defendant's New York office.

The Agreement also set out plaintiff's remuneration and the currencies and manner in which payment would be made. For instance, the Agreement indicated that plaintiff was to receive a bonus which would be determined each year of his assignment in Tokyo, with a minimum bonus in the first year in the amount of $15,-000.00. The bonus was to be based upon plaintiff's performance and the performance of his Tokyo branch. The Agreement also provided that plaintiff was to receive annual cost-of-living increases during his stay in Tokyo.

Plaintiff claims that he received excellent performance ratings throughout his detail in Tokyo, and the performance of the Tokyo branch improved during his tenure. Despite these favorable evaluations and the improved performance, plaintiff asserts that he received a significantly lower bonus in 1987 than that given to managers of French origin who were similarly situated. Plaintiff further contends that he received no bonus in 1988, while similarly situated French managers received bonuses.

Additionally, plaintiff argues that despite increases in the cost of living in 1987 and 1988, plaintiff did not receive any cost-of-living increase in his salary in 1988 or in 1989. Plaintiff contends he was denied cost-of-living increases and bonuses comparable to that received by similarly situated French managers as a result of his American national origin.

On April 3, 1989 defendant notified plaintiff that his detail in Tokyo was to be terminated. Defendant simultaneously offered plaintiff a position in Credit Administration in defendant's New York branch. Plaintiff alleges that the position offered was one of lower prestige, salary and responsibility than the position he held in Tokyo and in New York prior to his transfer. Plaintiff claims that he declined the offer and asked that his Tokyo detail be continued or that he be offered a more suitable position. On or about May 11, 1989, defendant notified plaintiff that his employment would be terminated as of June 20, 1989 because he had declined the Credit Administration position. Plaintiff claims that he was not offered other positions suitable to his background because of his national origin.

Following the termination of his employment plaintiff continued to occupy the Tokyo apartment that was provided to him by defendant pursuant to the express terms of the Agreement. In November of 1989

---

1. Defendant does not move to dismiss plaintiff's cost-of-living and bonus claims (fifth cause of action) based upon a breach of the Agreement.
   Defendant also does not move to dismiss plaintiff's claims, based upon Title VII (first cause of action), New York Executive Law § 296 (second cause of action) and the Agreement (sixth cause of action), that he was entitled to be integrated into the New York branch at a higher-level position than was offered to him and that he was unjustly terminated.

plaintiff filed a charge of discrimination against defendant with the Equal Employment Opportunity Commission. Plaintiff contends that shortly after defendant had been notified of the filing of plaintiff's charge, defendant raised the rent in the Tokyo apartment twenty-fold, and demanded that plaintiff vacate the apartment within three weeks or pay the increased rent retroactive to July 1, 1989. Defendant later commenced an action in Japan for the rent increases and plaintiff's eviction.

## DISCUSSION

Rule 56(c) provides that summary judgment "shall be granted forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." With the above standard in mind, the Court will now address defendants' summary judgment motions.

### I. New York Executive Law Claim

In his second cause of action, plaintiff claims that defendant's failure to pay him cost-of-living increases and bonuses comparable to that received by similarly situated French managers violated Section 296 of New York's Executive Law, which bars unlawful discriminatory practice. Plaintiff argues that N.Y.Exec. Law § 298–a extends the reach of the Human Rights Law [2] extraterritorially to encompass acts of defendant in Tokyo.[3] Plaintiff seeks compensatory relief for mental anguish pursuant to the New York Executive Law.

■ ·Although N.Y.Exec.L. § 298–a permits a New York resident to sue a domestic corporation for discriminatory acts committed outside New York, it does not provide a private civil cause of action to New York residents discriminated against out of state by a foreign corporation. *Sherwood v. Olin Corp.*, 772 F.Supp. 1418, 1425 (S.D.N.Y.1991). The Executive Law in this situation restricts available remedies to administrative proceedings before the New York State Division of Human Rights. *Sherwood*, 772 F.Supp. at 1421. Plaintiff thus has no claim before the Court for relief under this statute.

■ Furthermore, even if a civil remedy were permitted for discriminatory acts by foreign corporations against New York residents in states other than New York, the statute does not apply extraterritorially. A recent Supreme Court decision, *E.E.O.C. v. Arabian American Oil Co.*, — U.S. —, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), found that Title VII does not reach discriminatory actions in foreign countries. In reaching its conclusion the Supreme Court set stringent criteria which a statute must meet in order to apply abroad. The Court emphasized that Congress, and therefore by implication the states, legislates "against the backdrop of the presumption against extraterritoriality." *E.E.O.C.*, 111 S.Ct. at 1230. The legislators therefore must make "a clear statement that a statute applies overseas." *E.E.O.C.*, 111 S.Ct. at 1235.

As with Title VII, the New York Human Rights Law contains no clear indication of its applicability to acts occurring outside the United States. Although one could construe the language of § 298–a(1) quoted

---

**2.** Sections 290 to 301 of the New York Executive Law are known as the Human Rights Law.

**3.** This section provides in relevant part:
1. The provisions of this article shall apply as hereinafter provided to an act committed outside this state against a resident of this state ... if such act would constitute an unlawful discriminatory practice if committed within this state.
2. If a resident person or domestic corporation violates any provision of this article by virtue of the provisions of this section, this article shall apply to such person or corporation in the same manner and to the same extent as such provisions would have applied had such act been committed within this state except that the penal provisions of such article shall not be applicable.
3. If a non-resident person or foreign corporation violates any provision of this article by virtue of the provisions of this section, such person or corporation shall be prohibited from transacting any business within this state....

N.Y.Exec.L. § 298–a (McKinney 1982).

in footnote three above as indicating such applicability, an alternative construction is equally plausible. The New York State legislature in extending the statute's reach to acts outside the state could easily have been referring to acts in other states, and not seeking to exert its authority abroad. Thus, in view of the presumption against extraterritorial reach such language is insufficient to establish extraterritorial application.

In *E.E.O.C.* the Supreme Court faced with a similar situation considered two alternative constructions of the language of Title VII—one which asserted that it indicated an intent for the statute to apply abroad and one which contended the opposite. The Court declined to choose an interpretation, but rather noted the presumption against extraterritorial application and the ambiguity of the cited language, *E.E.O.C.*, 111 S.Ct. at 1231, in ultimately concluding that the language failed to establish applicability abroad. *E.E.O.C.*, 111 S.Ct. at 1233.

Furthermore, the Supreme Court declined to find extraterritorial applicability appropriate in the face of stronger evidence of Congressional intent for the statute to reach acts abroad than we have before us in the instant case. Title VII includes an "alien exemption provision" which states that the statute "shall not apply to an employer with respect to employment of aliens outside any state." 42 U.S.C. § 2000e-1. The Supreme Court did not infer from this provision an intent for the statute to apply to the employment of U.S. nationals abroad.

While the Supreme Court's conclusions regarding canons of statutory construction may not be binding authority in interpretation of state statutes, the Court finds its reasoning persuasive. Additionally, since both the *E.E.O.C.* decision and the case at bar concern the applicability of United States law abroad, an area within the special competence of the federal government, the Court believes it should defer to the guidance supplied by the Supreme Court. It would be incongruous if Congress, which clearly has the power to legislate extraterritorially, was more restricted in drafting such legislation than the New York legislature.

Based on both the plaintiff's lack of a civil cause of action under New York's Human Rights Law and the Act's inapplicability to occurrences abroad, the Court grants defendant's summary judgment motion and dismisses plaintiff's second cause of action. The Court, therefore, does not need to consider the constitutionality of extraterritorial application of New York Human Rights Law.

## II.  New York Labor Law Claim

Plaintiff's seventh cause of action charges that the defendant violated New York Labor Law § 198-c when it willfully failed to pay the bonuses and cost-of-living increases in breach of the parties' Agreement. Plaintiff seeks to recover compensation under the New York Labor Law for the damages resulting from the alleged breach of the Agreement.

■ N.Y. Labor Law § 198-c imposes criminal liability on an employer "who is party to an agreement to pay or provide benefits or wage supplements to employees ... and who fails, neglects or refuses to pay the amount or amounts necessary to provide such benefits or furnish such supplements." N.Y. Labor Law § 198-c (McKinney 1986). Although several New York courts inferred a civil cause of action from this penal statute, *see, e.g., Excavators Union Local 731 Welfare Fund v. Zurmuhlen*, 68 A.D.2d 816, 414 N.Y.S.2d 140 (App.Div.1979); *Johnson v. Clay Partition Co.*, 93 Misc.2d 414, 402 N.Y.S.2d 912 (Sup.Ct.1977); *Goldstein v. Mangano*, 99 Misc.2d 523, 417 N.Y.S.2d 368 (Civ.Ct. 1978), the New York Court of Appeals recently affirmed without opinion a Fourth Department decision which ruled that neither Section 198-a nor Section 198-c of the New York Labor Law give rise to a civil cause of action. *Stoganovic v. Dinolfo*, 92 A.D.2d 729, 461 N.Y.S.2d 121, 123 (App. Div.1983), *aff'd* 61 N.Y.2d 812, 473 N.Y.S.2d 972, 462 N.E.2d 149 (1984); *see also Sasso v. Vachris*, 106 A.D.2d 132, 482 N.Y.S.2d 875, 881 (App.Div.1984) ("The

Court of Appeals recently indicated that no civil cause of action is to be implied from section 198–c of the Labor Law."), *rev'd on other grounds* 66 N.Y.2d 28, 494 N.Y.S.2d 856, 484 N.E.2d 1359 (1985). Based on this decision, the plaintiff has no civil remedy under Section 198–c.

## III. Retaliation Claims

In his third and fourth causes of action, plaintiff charges that defendant retaliated against him in violation of Title VII, 42 U.S.C. § 2000e–3,[4] and the New York's Human Rights Law, Executive Law § 296(1)(e)[5] by increasing his rent twentyfold after learning that plaintiff had filed an EEOC claim against defendant.[6]

■ The Court finds that plaintiff's retaliation claims for compensatory damages are moot since Hammell has not been and will not be injured in any way by the rent demand. *See Christoforou v. Ryder Truck Rental, Inc.*, 668 F.Supp. 294, 301–02 n. 3 (S.D.N.Y.1987) (claim for equitable relief based on a hostile work environment denied as moot where plaintiff no longer worked for employer and did not seek reinstatement); *Bartel v. United States, Fed. Aviation Admin.*, 664 F.Supp. 669 (E.D.N.Y.1987) (re-employment claim dismissed as moot where plaintiff received

promotion and back pay); *Ackerman v. Board of Education*, 387 F.Supp. 76, 83 (S.D.N.Y.1974) (discrimination claim moot since maternity policy complained of had been amended and plaintiff no longer was employed by the school system). Plaintiff did not pay the increase in rent demanded, and defendant has withdrawn a counterclaim it had previously asserted in this action to obtain payment of the retroactive rent increase. Moreover, the parties settled the action commenced by defendant in Japan seeking to evict plaintiff from the apartment. Plaintiff agreed to vacate the apartment, and in fact subsequently moved out of the apartment, and defendant agreed not to press its rent demand.

■ In short, not only did plaintiff not pay defendant the increase in rent, but defendant is no longer seeking back payments in any forum, and is precluded from doing so in the future. Furthermore, as plaintiff has vacated the apartment, defendant, even if still possessing discriminatory or retaliatory animus, can no longer threaten plaintiff with rent increases, the alleged retaliatory conduct. Therefore, "there is no reasonable expectations that the [retaliatory] conduct will recur," and the claims are moot. *See Bundy v. Jackson*, 641 F.2d 934, 947–48 n. 13 (D.C.Cir.1981).[7]

---

**4.** Title VII provides:
[I]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

**5.** N.Y.Exec.Law § 296(1)(e) provides that it shall be an unlawful discriminatory practice "[f]or any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this article or because he has filed a complaint, testified or assisted in any proceeding under this article."

**6.** Plaintiff initially appeared to claim that defendant's retaliatory conduct included not only the rent increase but plaintiff's eviction from his apartment as well. However, plaintiff subsequently clarified that his retaliation claim is based only on the increased rent and not on his eviction from the apartment. *See*

Plaintiff Memorandum in Opposition to Defendant's Dismissal Motion, p. 39, n. 11.

**7.** Plaintiff's claims for mental anguish do not apply to the retaliation claims, and do not prevent the Court from dismissing these claims as moot. Although the complaint in its prayer for relief section requests compensatory damages for the mental anguish plaintiff suffered as a consequence of defendant's discriminatory acts, the body of the complaint makes clear that the plaintiff is seeking these damages with respect to plaintiff's second cause of action, his claim under the New York Human Rights Law for defendant's alleged discrimination against plaintiff in the awarding of bonuses and cost-of-living increases. These damages are explicitly requested in the section setting forth plaintiff's second cause of action, and are not referred to in the retaliation claims. Furthermore, it is well-established that damages for emotional distress are not allowed under Title VII. *Christoforou v. Ryder*, 668 F.Supp. at 301 n. 3.

As plaintiff's retaliation claim is based only on the increased rent and not on his eviction from the apartment, we do not need to consider whether injunctive relief is still possible.

202

## CONCLUSION

For the reasons set out above the Court grants defendant's motion for summary judgment dismissing 1) plaintiff's claim under New York Executive Law § 296 (second cause of action) that defendants discriminated against plaintiff on the basis of national origin in the payment of bonuses and cost-of-living increases; 2) plaintiff's claim under New York Labor Law § 198–c (seventh cause of action) seeking cost-of-living increases and bonuses; 3) plaintiff's retaliation claims brought under Title VII (third cause of action) and under the New York Executive Law (fourth cause of action). Plaintiff's claims, based upon Title VII (first cause of action), New York Executive Law § 296 (second cause of action) and the Agreement (sixth cause of action), that he was entitled to be integrated into the New York branch at a higher-level position than was offered to him and that he was unjustly terminated, as well as plaintiff's cost-of-living and bonus claims (fifth cause of action) based upon a breach of the Agreement, still remain in the instant action.

SO ORDERED.