**Dorothea BECKETT, Plaintiff,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Jeffrey Jack and Gene Farrell, Defendants.**

**No. 94–CV–8305.**

United States District Court, S.D. New York.

May 11, 1995.

Alvin Dorfman, Rebecca A. Sheehan, Law Offices of Alvin Dorfman, Freeport, NY, for plaintiff.

Edward Cerasia II, Seyfarth, Shaw, Fairweather & Geraldson, New York City, for defendant The Prudential Ins. Co. of America.

John A. Cannistraci, New York City, for defendant Jeffrey Jack.

Jonathan S. Sack, Law Offices of Steven Mitchell Sack, New York City, for defendant Gene Farrell.

## OPINION

SCHEINDLIN, District Judge.

Plaintiff Dorothea Beckett ("Beckett") brings this action against defendants Prudential Insurance Company of America ("Prudential"), Gene Farrell ("Farrell") and Jeffrey Jack ("Jack") for alleged violations of § 296 of the New York Human Rights Law ("NYHRL"). Plaintiff asserts three causes of action under § 296: (1) "hostile environment" sexual harassment; (2) *quid pro quo* sexual harassment; and (3) retaliation for complaining of the alleged sexual harassment. Prudential moves to dismiss all of these claims pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).[1] Defendants Jack and Farrell join in Prudential's motion and additionally move to dismiss under Rules 12(b)(2) and 12(b)(3). Alternatively, Jack and Farrell move under 28 U.S.C. § 1404 to transfer the action to the Southern District of Ohio.

The Court held a hearing on February 21, 1995. For the reasons stated below, Prudential's motion is granted in part and denied in part. Defendants Jack and Farrell's motion to dismiss is granted.

## I. BACKGROUND

### A. *The Parties*

Plaintiff commenced this civil rights action against defendants Prudential, Jack and Farrell on October 13, 1994, in Supreme Court, New York County. Pursuant to this Court's

---

1. Prudential's motion to dismiss the complaint is properly characterized as one arising only under Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(1) motion is a motion to dismiss for lack of subject matter jurisdiction; however, Prudential does not at any time question that diversity exists between the parties, which is the basis of this Court's subject matter jurisdiction over the controversy. Prudential's assertion that the NYHRL does not apply to conduct in Ohio, *see infra* pp. 237–238, 241, is an assertion that plaintiff has not stated a claim upon which relief can be granted and is *not* a claim that this Court lacks subject matter jurisdiction over the controversy.

diversity jurisdiction, Prudential removed the case to this Court on November 15, 1994.

Plaintiff was a registered representative employed by Prudential from April, 1991 until July, 1992 at Prudential's offices in Marietta and Newark, Ohio. At the time of her employment, plaintiff was a resident of Ohio. Plaintiff is now a resident of West Virginia.

Prudential is a New Jersey company, with its principal place of business in New Jersey. Prudential is engaged in the insurance business and has offices throughout the United States. At all times relevant to the current action, Prudential maintained offices in Marietta, Newark and Zanesville, Ohio.

Defendants Jack and Farrell are citizens of Ohio. Farrell was employed by Prudential as a manager in its Marietta, Ohio office during the times relevant to this action. Jack was employed by Prudential as a district manager at Prudential's district offices in Zanesville, Ohio.

## B. *The Sexual Harassment Claims*

Beckett alleges that during her employment with Prudential in Ohio she "was continually subjected to the sexual advances, sexually explicit comments and other forms of sexual harassment of defendants, Farrell and Jack, creating an extremely hostile work environment while on the job and during work hours." Complaint at ¶ 7. Beckett further alleges that in or about June, 1991, she "acquiesced to defendant Farrell's requests and had sexual relations with the defendant in her home" in Ohio. *Id.* at ¶ 10. Between August, 1991 and May, 1992, plaintiff claims she engaged in sexual relations with Farrell in her Ohio home and the Marietta office. Beckett also alleges that from May, 1991 through July, 1992, Jack repeatedly made sexually offensive comments to her at both the Marietta and Zanesville, Ohio offices of Prudential. In May, 1992, plaintiff requested a transfer from the Marietta, Ohio office. In June, 1992 she began working at Prudential's office in Newark, Ohio until she resigned in July, 1992.

Beckett claims that defendants' conduct constituted sexual discrimination by creating a hostile and abusive work environment.

Plaintiff further alleges that this conduct had the purpose and effect of unreasonably interfering with her work and creating a dangerous, highly intimidating, hostile and offensive work environment. *Id.* at ¶ 41. Finally, Beckett alleges that defendants jointly and severally violated § 296 of the NYHRL due to Farrell's *quid pro quo* sexual harassment, which included his overt and implicit demands that Beckett accept his sexual advances as a condition of remaining and advancing in Prudential's employ. *Id.* at ¶ 42.

## C. *The Retaliation Claims*

In July, 1992, Beckett asserts that she began making plans to move to Long Island, New York. *Id.* at ¶ 28. At that time, Beckett travelled to Long Island and met with Ronald Sofoul, the district manager of Prudential's office in West Babylon, New York, to discuss employment with that office. Mr. Sofoul told her that he would like to hire her as a representative but that she would first be required to quit her job at the Newark office of Prudential. *Id.*

After returning to Ohio, Beckett told Jack that she planned to resign because she had been offered a position at the West Babylon office. Jack advised Beckett that Mr. Sofoul could not hire her for at least six months because Prudential's employment regulations restrict the hiring of former agents who quit and seek to be rehired by Prudential. *Id.* at ¶ 29. Following this discussion, Beckett allegedly contacted Sofoul to discuss this "6 month" rule. Beckett maintains that Sofoul advised her that the rule would not prevent him from hiring her. *Id.* at ¶ 30.

In the late summer of 1992, plaintiff began spending time at the New York office, preparing for her New York State insurance and "Blue Sky" exams and making "x-dating" calls for appointments with prospective clients. *Id.* at ¶ 31. The West Babylon Office was designated as plaintiff's sponsor for the Blue Sky Exam. Beckett further maintains that in September, 1992, she received a letter from Sofoul explaining that he would be unable to rehire her due to the "6 month" rule. According to Beckett, she then reminded Sofoul that he had told her that the

regulation would not be an obstacle to hiring her. Sofoul gave no response. *Id.* at ¶ 32.

Beckett claims defendants retaliated against her because Jack and Farrell gave her a "negative recommendation" and "made threatening remarks to Ronald Sofoul in July or August of 1992 . . . in direct retaliation for plaintiff's implicit objection" to the alleged sexual harassment by Jack and Farrell. *Id.* at ¶¶ 33, 37, 44.

## II. DISCUSSION

### A. *The Sexual Harassment Claims*

■ Beckett cannot maintain an action for sexual harassment under either hostile environment or *quid pro quo* theories. Section 298–a of the NYHRL provides in pertinent part that the NYHRL applies to acts "committed outside this state against a resident of this state . . . if such act would constitute an unlawful discriminatory practice if committed within this state." The NYHRL does not provide a *non-resident* with a private cause of action for discriminatory conduct committed *outside* of New York by a *New York* corporation. *See Iwankow v. Mobil Corporation,* 150 A.D.2d 272, 541 N.Y.S.2d 428, 429 (1st Dept.1989). Moreover, the NYHRL does not provide a cause of action to a *New York* resident for discriminatory acts committed *outside* of New York by a *foreign* corporation. *See Hammell v. Banque Paribas,* 780 F.Supp. 196 (S.D.N.Y. 1991); *Sherwood v. Olin Corporation,* 772 F.Supp. 1418 (S.D.N.Y.1991). Here, Beckett was not a resident of New York at the time of the alleged discrimination, and the alleged acts of discrimination were committed in Ohio by foreign defendants. Because the NYHRL does not provide a remedy for actions taken in Ohio against *non-residents* by *foreign* defendants, Beckett cannot assert a civil rights claim under the NYHRL.

■ Although plaintiff cannot maintain a claim for sexual harassment under the NYHRL, she requests this Court to re-examine and reconstrue the language of § 298–a to prevent the "unfair and unreasonably harsh result" of *Sherwood* and *Hammell.* Memoranda of Law in Opposition ("Pl. Mem.") at 12–13. The Court declines this request on two grounds. First, "where the statutory language is unambiguous, [a] court must do no more and no less than apply the language as written." *Zaldin v. Concord Hotel,* 48 N.Y.2d 107, 113, 421 N.Y.S.2d 858, 397 N.E.2d 370 (1979) (*citing People ex rel. New York Cent. and Hudson Riv. R.R. Co. v. Woodbury,* 208 N.Y. 421, 424–25, 102 N.E. 565 (1913)). By its terms, of course, § 298–a does not extend the coverage of the NYHRL to out-of-state discrimination committed against non-residents. Second, plaintiff had ample opportunity to pursue her claims in Ohio under the Ohio Fair Employment Practice Law, 41 Ohio Rev.Code Ann. § 4112.01 *et seq.* (1993). *See* Prudential's Reply Memorandum ("Pr.Rep.Mem.") at p. 5. Beckett also could have brought a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5. Because plaintiff could have brought her claims in the proper forum but chose not to do so, it is not unfair or harsh to dismiss plaintiff's hostile environment and *quid pro quo* sexual harassment claims. Accordingly, defendants' 12(b)(6) motion to dismiss Beckett's sexual harassment claims is granted.

### B. *Personal Jurisdiction Over Jack And Farrell*

■ Jack and Farrell move, pursuant to Fed.R.Civ.P. 12(b)(2), to dismiss for lack of personal jurisdiction. Personal jurisdiction in a diversity action is determined by the law of the forum in which the federal court sits. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.* 763 F.2d 55 (2d Cir.1985). In addition, the exercise of personal jurisdiction must comport with constitutional due process requirements. *Intermeat, Inc. v. American Poultry, Inc.,* 575 F.2d 1017 (2d Cir.1978). Specifically, a defendant must have certain "minimum contacts" with the forum state so that the suit does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Beckett asserts that this Court has personal jurisdiction over Jack and Farrell under N.Y.Civ.Prac.L & R § 302(a)(2). Section

302(a)(2) provides in relevant part that "a court may exercise personal jurisdiction over any nondomiciliary ... who in person ... commits a tortious act within the state." Beckett maintains that Jack and Farrell's telephone or written communication with Sofoul in New York satisfies the requirements of this section. Defendants argue that, even assuming that they made a single telephone call or written communication to Sofoul in New York, this contact is insufficient to constitute a "tortious act within the state."

 Personal jurisdiction does not exist over either Jack or Farrell because "one single telephone call made to New York is insufficient contact to support a suit initiated in that forum against an out-of-state resident under either the contract or **tort provisions of CPLR 302.**" *Fox v. Boucher,* 794 F.2d 34, 37 (2d Cir.1986) (citations omitted) (emphasis added). As to § 302(a)(2), one telephone call made to New York by an out-of-state defendant does not constitute a "tortious act within the state" because the defendant must be physically present in New York when committing the tort. *See Feathers v. McLucas,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965); *Roth v. El Al Airlines, Ltd.,* 709 F.Supp. 487 (S.D.N.Y.1989); *Van Essche v. Leroy,* 692 F.Supp. 320 (S.D.N.Y.1988); *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040 (S.D.N.Y.1987). Moreover, the transmission of a communication, from outside of New York into New York, is not an act committed "within the

state" for purposes of Section 302(a)(2) jurisdiction. *Van Essche,* 692 F.Supp. at 324–25 (mailing of a tortious letter from Texas to New York did not give rise to jurisdiction under § 302(a)(2) because the mailing was not an act committed in New York); *Marine Midland Bank v. Keplinger & Associates, Inc.,* 488 F.Supp. 699 (S.D.N.Y.1980) (knowingly sending a false statement into a state intending that it be relied upon in that state is considered to be an action committed outside of the state). Here, it is undisputed that neither Jack nor Farrell made a call or wrote to Sofoul while they were present in New York; rather, the alleged communication emanated from Prudential's Ohio offices. Thus, § 302(a)(2) cannot be used to establish personal jurisdiction over Jack or Farrell because they did not, as a matter of law, commit a tort in New York.[2]

Finally, the Court notes that it would offend "minimum contacts" due process principles to require Jack and Farrell, who are Ohio residents, to litigate this claim in a New York forum based on one telephone call. *International Shoe Co.,* 326 U.S. at 316–317, 66 S.Ct. at 158–159; *Fox,* 794 F.2d at 37. Accordingly, Jack and Farrell's motions to dismiss for lack of personal jurisdiction are granted.[3]

### C. *Retaliation Claims Against Prudential*

Beckett alleges that defendants retaliated against her because of her objections to Jack

---

**2.** Plaintiff's reliance upon *Roundball Enterprises, Inc. v. Richardson,* 616 F.Supp. 1537 (S.D.N.Y. 1985) and *New England Laminates Co., Inc. v. Murphy,* 79 Misc.2d 1025, 362 N.Y.S.2d 730 (Sup.Ct.Spec.Term 1974) is misplaced. *See* Pl. Mem. at 15. In *Roundball Enterprises,* the court found that jurisdiction existed over the defendant under § 302(a)(2) only after he had sent several letters, made numerous phone calls and **visited** New York on two separate occasions. *Id.* at 1539. Here, of course, plaintiff alleges no connection between Jack and Farrell and New York other than a single telephone or written communication. In *New England Laminates,* the court held that jurisdiction existed under § 302(a)(2) after the defendant engaged in **three weeks** of telephone negotiations to induce an individual to leave his employment in New York. *Id.* at 730. Although the *New England Laminates* court found that defendant's phone calls from outside of New York constituted a tortious act within New York, this result is not in accord with the

view of the New York Court of Appeals and most New York decisions. *See, e.g., Feathers,* 15 N.Y.2d at 443, 261 N.Y.S.2d at 8, 209 N.E.2d at 68; *Van Essche,* 692 F.Supp. at 324 (discussing cases and noting that most New York courts require physical presence as a prerequisite to a finding of jurisdiction under § 302(a)(2)).

**3.** Although not asserted by Beckett as a basis for jurisdiction, the Court notes that CPLR § 302(a)(3) does not provide jurisdiction over Jack and Farrell. Section 302(a)(3) provides for jurisdiction over a nonresident who commits a tortious act outside the state, causing injury to persons or property within the state. Because the Court finds that personal jurisdiction over Jack and Farrell based on one telephone call or letter to New York would not satisfy due process requirements, the Court need not determine the situs of the alleged injury to plaintiff to find that § 302(a)(3) is unavailable to plaintiff.

and Farrell's sexual harassment. Specifically, Beckett alleges that "Sofoul was contacted by defendants, Jack and/or Farrell, sometime in July or August, 1992, wherein [they] gave plaintiff a poor recommendation ... and/or threatened Mr. Sofoul that [they] would make it a problem for Mr. Sofoul's office to rehire plaintiff." Complaint at ¶ 33. Beckett asserts that Sofoul then refused to hire her, despite his previous assurances. *Id.* at ¶ 32. Prudential argues that plaintiff may not maintain a claim of retaliation for four reasons: (i) because the NYHRL only bars discriminatory acts against employees and Beckett was no longer an employee at the time of the alleged retaliatory acts, plaintiff may not assert a cause of action against Prudential; (ii) retaliation in the form of either a poor recommendation or threat is not cognizable as a "discriminatory practice" under the NYHRL; (iii) Beckett cannot maintain a claim under the NYHRL because any retaliation took place in Ohio and Prudential is a foreign corporation; and (iv) Beckett has failed to establish a prima facie case of retaliation. For the following reasons, Prudential's motion to dismiss is denied.

### i. *Plaintiff May Maintain A Claim For Post–Employment Retaliation*

In analyzing a suit brought under § 296 of the NYHRL, "both state and federal courts rely on federal Title VII case law." *Kump v. Xyvision, Inc.,* 733 F.Supp. 554, 559 (E.D.N.Y.1990). As recognized by the Supreme Court, elements of successful employment discrimination claims are virtually identical under Title VII and § 296 of the NYHRL. *See Kremer v. Chemical Construction Corporation,* 456 U.S. 461, 479, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982). Moreover, § 2000e–3 of Title VII and NYHRL § 296(1)(e) contain nearly identical language: § 2000e–3 provides that it is an "unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice ... or because he has made a charge" of

an unlawful employment practice, while § 296(1)(e) provides that "[i]t shall be an unlawful discriminatory practice for an employer ... to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden ... or because he has filed a complaint."

The Second Circuit has held that federal anti-discrimination statutes prohibit "discrimination related to or arising out of employment relationships whether or not the person discriminated against is an employee at the time of the discriminatory conduct." *Pantchenko v. C.B. Dolge Company, Inc.,* 581 F.2d 1052 (2d Cir.1978). In *Pantchenko,* the Court defined "employee" in Title VII to include former employees in order to give effect to the statute's purpose of furnishing "a remedy against an employer's use of discrimination in connection with a prospective, present or past employment relationship to cause harm to another." *Id.* at 1055; *see also Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979) (former employees fall within the broad remedial scope of Title VII); *Rutherford v. American Bank of Commerce,* 565 F.2d 1162 (10th Cir.1977). Because Title VII would permit plaintiff to maintain a retaliation claim against Prudential, Beckett may properly assert a claim of retaliation against her former employer under § 296 of the NYHRL.[4]

### ii. *Negative References Are A Cognizable Form Of Retaliation*

Prudential argues that, even if Jack or Farrell gave a negative reference to Sofoul, a claim of retaliation is not stated because a negative reference is not a retaliatory act. Poor recommendations, refusals to furnish recommendations, or threats to future employers may be discriminatory practices if done in direct retaliation for a former employee's opposition to an unlawful employment practice. The Second Circuit has held that charges of blacklisting fall within the broad remedial scope of Title VII. *Silver,* 602 F.2d at 1090; *see also Pantchenko,* 581

---

**4.** Defendant cites *Ferguson v. Mobil Oil Corp.,* 443 F.Supp. 1334, 1339 (S.D.N.Y.1978), *aff'd mem.* 607 F.2d 995 (2d Cir.1979), to establish that plaintiff cannot maintain a claim for post-

employment retaliation. In *Ferguson,* however, plaintiff did not allege that the "blacklisting" was an act of discrimination or retaliation. Thus, § 2000e–3 was not addressed.

F.2d at 1055 (refusing to give references in retaliation for an employee's filing of a charge with the EEOC constitutes prohibited discrimination).

Moreover, the NYHRL designates blacklisting as an unlawful discriminatory practice, albeit in the non-employment context. Subdivision 13 of § 296 provides that it is an "unlawful discriminatory practice for any person to discriminate against, boycott or blacklist . . . any person, because of the race, creed, color, national origin or sex of such person." Blacklisting is plainly unlawful in the commercial discrimination context. The language of the statute should not be so narrowly construed as to prohibit a plaintiff from maintaining a claim of retaliation based upon alleged blacklisting in the employment discrimination context.

### iii. *A Claim Is Stated Under The NYHRL*

■ Prudential argues that no claim against it has been stated under the NYHRL because any retaliation by Jack or Farrell occurred in Ohio and Prudential is a foreign defendant.[5] As discussed above, the NYHRL does not provide a remedy for actions taken in Ohio against a non-resident by a foreign defendant. *See* pp. 237–238, *supra.* However, if the retaliation occurred in New York, a claim would be stated against Prudential because the NYHRL applies to discriminatory actions taken in New York by a foreign corporation. *See U.S. Power Squadrons v. State Human Rights Appeal Board,* 59 N.Y.2d 401, 465 N.Y.S.2d 871, 452 N.E.2d 1199 (1983) (NYHRL applies to all discrimination occurring within New York—even discrimination by foreign corporations); *see also Matter of Walston & Co. v. N.Y. City Commission on Human Rights,* 41 A.D.2d 238, 342 N.Y.S.2d 459 (1st Dep't 1973) (NYHRL applies to discrimination in New York against non-residents).

At this juncture, the Court cannot determine whether the alleged retaliation occurred in Ohio or New York. While the complaint does not explicitly state that Sofoul decided not to rehire the plaintiff in retaliation for her opposition to Jack and Farrell's sexual harassment, the complaint does state that Sofoul withdrew plaintiff's offer of employment after he was contacted by Jack or Farrell, and that Sofoul gave "no response" to plaintiff when questioned about this decision. Complaint at ¶¶ 32, 33. Thus, it is reasonable to infer that Sofoul withdrew his offer to plaintiff because Jack or Farrell had informed him about plaintiff's opposition to the sexual harassment. If this inference were true, the retaliation may be considered to have taken place in New York.

In this vein, the Court is particularly mindful that, for purposes of a Rule 12(b)(6) motion, a court must consider all material factual allegations in the complaint to be true and construe all reasonable inferences in a light most favorable to the plaintiff. *See Paulemon v. Tobin,* 30 F.3d 307 (2d Cir.1994). The complaint may be dismissed only if it appears beyond a reasonable doubt that a plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief. *Id.* at 309. Beckett's allegations do create an inference that Sofoul may have retaliated against her because Jack and Farrell contacted him. In addition, Beckett has not had the opportunity to conduct any discovery on this issue; without the opportunity to cross-examine Mr. Sofoul, review defendants' documents, or locate potential witnesses, serious questions of fact remain. At the very least, it is unclear at this point if the retaliation took place in New York or Ohio. *See Walston,* 342 N.Y.S.2d at 463 (reversing N.Y. City Commission on Human Rights' assertion of jurisdiction over complaint by citizen of Illinois who alleged discrimination because it was unclear if the discrimination occurred in Indiana, Illinois, or New York). Thus, Prudential's motion to dismiss for failure to state a claim under the NYHRL is denied.

### iv. *Plaintiff Has Sufficiently Established A Prima Facie Case Of Retaliation*

■ Prudential's last argument is that plaintiff's retaliation claim should be dismissed because she has not alleged a prima facie case of retaliation under the NYHRL.

---

**5.** *See* Note 1, *supra.*

Pl.Mem. at 13. Specifically, Prudential claims Beckett has not alleged that Sofoul had "knowledge" of her complaint to Prudential management about the alleged harassment by Jack and Farrell.[6] *Id.* However, as discussed above, plaintiff's complaint raises an inference that contact between Jack or Farrell and Sofoul occurred, and that Sofoul may have subsequently decided against hiring plaintiff because of this contact. Sofoul thus may have had knowledge of Beckett's complaints about the alleged harassment. Accordingly, Prudential's motion to dismiss the retaliation claim is denied.[7]

## III. CONCLUSION

For the above reasons, defendants' motion to dismiss the sexual harassment claim is granted. Jack and Farrell's motion to dismiss for lack of personal jurisdiction is granted. Prudential's motion to dismiss the retaliation claim is denied.

SO ORDERED.

---

6. A prima facie case of retaliation requires a plaintiff to set forth claims showing "that [she] engaged in a protected [activity], that the employer was aware of this activity, that the employer took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse employment action, i.e., that a retaliatory motive played a part in the adverse employment action." *Sands v. Runyon,* 28 F.3d 1323, 1331 (2d Cir.1994) (citing *Sumner v. United States Postal Service,* 899 F.2d 203, 208–9 (2d Cir.1990)). Prudential asserts that Beckett has not satisfied the second prong of this standard—that Sofoul was aware of Beckett's protected activity. Prudential's argument assumes, of course, that Sofoul's knowledge of Beckett's actions would be imputed to it.

7. Although I deny Prudential's motion to dismiss the retaliation claim, it may be entitled to summary judgment on this issue after further discovery. Defendants have presented affidavits by Jack and Farrell which deny ever having communicated with Sofoul. *See* Jack Affidavit at ¶ 4; Farrell Affidavit at ¶ 4. In addition, Sofoul has denied that any contact ever occurred. *See* Affidavit of Ronald R. Sofoul, at Ex. A, ¶¶ 2–4. Besides her bare allegations to the contrary, Beckett has not yet presented any evidence to counter these statements. If no evidence emerges after further discovery, Prudential may request leave to file a motion for summary judgment.