**Alvin Howard CANELL, Plaintiff,**

v.

**MULTNOMAH COUNTY, et al., Defendants.**

**No. CIV. 98–575–AA.**

United States District Court, D. Oregon.

Feb. 26, 2001.

Alvin H. Canell, Salem, OR, pro se.

Susan M Dunaway, Portland, OR, for defendants.

## ORDER

AIKEN, District Judge.

Plaintiff filed this action under 42 U.S.C. § 1983 alleging claims arising out of his incarceration in Multnomah County jails. Plaintiff's Third Amended Complaint (# 73) alleges 39 claims relating to conditions of confinement, right of access to the courts and medical care. Plaintiff also alleges in his Statement of Facts that defendants violated the Americans with Disabilities Act ("ADA") and denied him access to the courts by failing to provide an adequate law library and legal assistance. Before the court is defendants' Motion for Summary Judgment (# 134).

***Motion to Strike:*** As a preliminary matter, plaintiff has moved to strike portions

of the affidavits submitted in support of defendants' motion for summary judgment, Motion to Strike (# 153), and to Strike Affidavits in Reply to Opposition (# 182).

Plaintiff argues that portions of defendants' affidavits are improper under F.R.C.P. 56(e) because they are not based on the affiants personal knowledge.

I have reviewed the affidavits. Plaintiff's interpretation of F.R.C.P. 56 is unduly ridged and technical. Plaintiff's arguments may be material to the evidentiary weight of the affidavits, but the challenged portions are admissible. Plaintiff's objections to defendants' supplementary affidavits and exhibits are without merit. Plaintiff's Motions to Strike (# 153) and (# 182) are denied.

*Motion for Summary Judgment:* The relevant facts are as follows: From November 3, 1997, until November 20, 1997, and again from March 12, 1998, to June 17, 1998, plaintiff was incarcerated in Multnomah County on burglary charges and parole violations. Plaintiff spent part of his time in the Multnomah County Inverness Jail ("MCJI") and part of his time at the Multnomah County Detention Center ("MCDC").

During the time of his incarceration at MCDC, plaintiff was enrolled in the In Jail Intervention Program ("IJIP") which provides addiction counseling. On May 1, 1998, Deputy Scott Yon submitted a request that plaintiff be reclassified and removed from the IJIP module due to disruptive behavior.

While in the custody of Multnomah County, plaintiff was pursuing various legal matters. In addition to the two criminal matters for which he was being prose-

cuted, plaintiff was also litigating two civil cases as well as the case presently before the court. Plaintiff was represented by counsel in the criminal cases and pursued the remaining matters *pro se.*

At all Multnomah County jails, medical care is provided to inmates regardless of ability to pay. In accordance with state statutes, inmates are billed $5.00 against their inmate account for various medical services. Medical charges are deducted from an inmate's account if funds exist. If there are no funds in the inmate's account, the medical charges go unpaid. Plaintiff was charged $5.00 for certain medical services he received.

On June 4, 1998, while plaintiff was incarcerated in the MCDC, Deputy Roger Leger ordered a group of inmates, including plaintiff, to clean their sleeping areas. When the sleeping areas were not adequately cleaned, Deputy Leger allegedly ordered the group of inmates to clean chairs in the general living area.[1]

After plaintiff filed his complaint in this action, defendants filed a counterclaim pursuant to Oregon law to recover the cost for providing plaintiff's housing, food and care during his incarceration. Defendants subsequently dismissed the counterclaim.

Defendants have filed a comprehensive 100 page memorandum in support of their motion for summary judgment, addressing all of plaintiff's claims, designated and implied, and asserting alternative arguments and grounds for dismissal as appropriate.

However, it is not necessary to specifically and separately address each defense that defendants have argued as to each of plaintiff's claims. Although the court has carefully considered each argument, it has

---

1. Deputy Leger contends that he gave the inmates the option of washing chairs or being written up for disciplinary action. Plaintiff alleges that the inmates were not given any

option, they were simply ordered to clean the chairs as punishment for failing to make their beds. Plaintiff's version is accepted as true for summary judgment purposes.

limited its discussion of plaintiff's claims to a single dispositive ground where possible and not necessarily addressed every alternative argument or defense. For example, it is not necessary to discuss defendants' arguments for dismissing plaintiff's claim against defendants for acting in their personal capacity when the claim is otherwise fatally defective.

***Fourth Amendment claims:*** Plaintiff alleges numerous claims under the Fourth Amendment, in conjunction with other constitutional grounds. (Claims 3, 4, 5, 10, 11, 15, 23, 24, 34 and 39). The Fourth Amendment applies to government searches or seizures. *United States v. Attson,* 900 F.2d 1427 (9th Cir.1990), *cert denied,* 498 U.S. 961, 111 S.Ct. 393, 112 L.Ed.2d 403 (1990). Plaintiff has not alleged any facts which would give rise to a claim governed by the Fourth Amendment.

***Fourteenth Amendment / Pretrial Detainee Claims:*** Plaintiff has made several claims based on protections afforded pretrial detainees under the Fourteenth Amendment, in conjunction with other constitutional grounds. (Claims 3, 4, 5, 10, 11, 12, 15, 17, 23, 24, 26, 30, and 35).

█ Assuming *arguendo* that a Fourteenth Amendment analysis should apply to the alleged pretrial detainee claims, it is undisputed that plaintiff was either on parole or in custody pursuant to a revocation of parole during the time of his incarceration in the Multnomah County Corrections facilities. An inmate serving a sentence of incarceration on a parole violation is not a pretrial detainee.

***Physical Injury requirement:*** Courts have traditionally imposed a requirement of injury on constitutional claims. In 1996, Congress imposed a statutory injury requirement when it enacted the Prison Litigation reform Act, 42 U.S.C. § 1997e(e). Pursuant to the PLRA, a plaintiff must suffer a physical injury in order to recover damages. Section 803 provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

The Ninth Circuit has not yet specifically addressed what constitutes "physical injury." The Fifth Circuit has held that:

> In the absence of any definition of "physical injury" in the new statute, we hold that the well established Eighth Amendment standards guide our analysis in determining whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering. That is the injury must be more than *de minimis,* but need not be significant.

*Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir.1997), citing *Hudson v. McMillian,* 503 U.S. 1, 10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

The PLRA also prevents damage claims based on conditions creating "imminent danger" of being injured. *See, Jones v. Greninger,* 188 F.3d 322, 326 (5th Cir.1999) (fear of physical injury dos not constitute actual physical injury).

The only apparent exception to the physical injury requirement is in the area of the First Amendment. For First Amendment claims, the Ninth Circuit has held that physical injury is relevant. *See, Canell v. Lightner,* 143 F.3d 1210, 1213 (9th Cir.1998).

█ In Claims 3, 4, 5 and 26, plaintiff alleges that defendants did not shower and "debug" inmates or test them for communicable disease before double bunking and mixing them with the general population. However, plaintiff has failed to establish any constitutionally significant physical in-

jury resulting from defendants' alleged conduct. Plaintiff's toe fungus, even if attributable to "sanitation," was treated with medication and was at most a minor irritation.

In Claim 6, plaintiff alleges that defendants served food in unsanitary ways and exposed inmates to unsanitary conditions by requiring inmates to eat in their cells. Plaintiff contends that he was constipated on occasion from not eating. The brief denial of a necessity such as food, sanitation or water does not rise to the level of a constitutionally significant injury, *See, Bolin v. Rice,* 2000 WL 342676, *6 (N.D.Cal.).

■ In Claim 7, plaintiff alleges that defendants doubled celled inmates who had diseases and that defendants did not clean cells before placing new inmates in the cells. Plaintiff alleges that he was splashed in the eye with vomit from an inmates with AIDS. However, plaintiff has not been tested as HIV positive and alleged "exposure" to AIDS does not state a claim. *See, Hochman v. Rafferty,* 1989 WL 200955 (D.N.J.); *Bolton v. Goord,* 992 F.Supp. 604 (S.D.N.Y.1998).

In Claims 8 and 14, plaintiff alleges that defendants double celled plaintiff with inmates who were withdrawing from drugs and alcohol who might spread disease. However, plaintiff acknowledges that no physical injury resulted.

In Claims 29 and 30 plaintiff alleges that defendants failed to provide adequate ventilation which caused sore in his nose. The record reflects that plaintiff's nose sores were relieved with water and baby oil. Thus, even if caused by poor ventilation, the "injury" is insufficient to support a constitutional claim. *See, Lile v. Tippecanoe County Jail,* 844 F.Supp. 1301, 1310 (N.D.Ind.1992).

In Claims 33 and 36, plaintiff alleges that he was transported and held in cold holding cells. However, it is undisputed that plaintiff's exposure to cold weather was for less than five minutes and that he did not suffer any injury as a result. Plaintiff alleges that he caught a cold from being exposed to cold weather, but he did not seek medical treatment or develop complications such as bronchitis or pneumonia.

■ In Claims 14, 22, 23, 24, 25, 27 and 28, plaintiff alleges that he was put at increased risk of violence by other inmates by defendants' "double bunking" practices. The record reflects that plaintiff was attacked once by an another inmate while double bunked. However, plaintiff acknowledges that he was not physically injured and did not seek medical attention. As discussed above, the fear of or risk of physical injury does not equate with actual physical injury.

■ In Claims 34 and 35, plaintiff alleges that he was subjected to cruel and unusual punishment and involuntary servitude when he was required to wash chairs for 45 minutes. Plaintiff alleges that the task caused pain in his hands and elevated blood pressure and stress. These de minimis complaints do not constitute "physical injury" under the PLRA.

Claims 15 and 32 allege that plaintiff's Eighth Amendment rights were violated when he was not provided reading glasses and when he was charged for health care expenses. Plaintiff has not alleged that he suffered any physical injury related to any medical needs he had while he was incarcerated in Multnomah County. He only asserts a lack of medical care for not being provided with reading glasses and acknowledges that he did not suffer any physical injury as a consequence. Accordingly, the PLRA bars his claims.

In summary, plaintiff did not get any diseases, did not get the stomach flu and

did not get lice. At worst, he developed a fungus on his foot, sores in his nose, constipation and a winter cold. I find that these *de minimis* complaints are insufficient to constitute physical injuries for purposes of the PLRA.

***Eighth Amendment Claims:*** Claims 3, 4, 5, 6, 7, 8, 14, 26, 29, 30, 33 and 36 are based on alleged Eight Amendment violations arising out of conditions of confinement relating to health risks, including claims relating to sanitation, ventilation, risk of communicable disease and food service.

Assuming *arguendo* that the physical conditions discussed above (relative to defendants' PLRA defense) are sufficient to constitute a physical injury for purposes of the PLRA, I find that they are insufficient to support a claim under the Eighth Amendment.

■ The Eighth Amendment proscribes punishments which involve the "unnecessary and wanton infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

■ In order to establish liability under the Eighth Amendment, plaintiff must prove two distinct components: 1) that the plaintiff has actually suffered an extreme deprivation or is placed at a substantial risk of suffering a significant injury; 2) that the defendants acted with a sufficiently culpable state of mind (deliberate indifference). *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *LeMaire v. Maass,* 12 F.3d 1444, 1451 (9th Cir.1993); *May v. Baldwin,* 109 F.3d 557, 565 (9th Cir.1997).

"The Eighth Amendment does not apply to every deprivation or even every unnecessary deprivation, suffered by a prisoner, but only that narrow class of deprivations involving 'serious injury inflicted by prison officials acting with a culpable state of mind'. We have described these twin elements as the 'objective' and 'subjective' components of an Eighth Amendment prison claim." *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

There is a *de minimis* level of imposition with which the Constitution is not concerned. *Ingraham v. Wright,* 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). "Extreme deprivations are required to make out a conditions of confinement claim. Because routine discomfort is 'part of the penalty that criminal offenders pay for their offense against society,' only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eight Amendment violation." *Hudson v. McMillian, supra* at p. 8–9, 112 S.Ct. 995, quoting *Rhodes v. Chapman, supra* at 347, 101 S.Ct. 2392 and *Wilson v. Seiter, supra* at 298, 111 S.Ct. 2321.

■ In this case, plaintiff's Eighth Amendment claims fail because he has failed to establish any extreme deprivation or risk of significant injury from any of the alleged conditions of confinement. The matters complained of by plaintiff are the type of "routine discomfort" that is part of the penalty that criminal offenders pay for their offenses against society, and not sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian, supra.*

Because I find that plaintiff has failed to establish the objective prong of the two part Eighth Amendment analysis, it is unnecessary to address in detail defendants' argument that plaintiff has not demonstrated the subjective component of the

test, that is that defendants acted with deliberate indifference to deprivation or injury.

However, I note that in order to prove deliberate indifference, plaintiff must demonstrate that defendants were subjectively aware of an obvious serious risk of harm and ignored that risk. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Where defendants truly do not believe a serious risk is present, there is no deliberate indifference. *Id.*, at 884, 114 S.Ct. 1970. In this case, a review of the record indicates that defendants responded appropriately to plaintiff's complaints and were not deliberately indifferent to any obvious serious risk of harm.

*Access to the Courts:* Plaintiff was involved in a number of litigations while he was incarcerated in Multnomah County. These litigations included two civil matters, two criminal matters and the case at bar. Plaintiff also began the administrative process to pursue two Longshore claims and contemplated suing Burger King and Keinows. Plaintiff alleges several denial of access to the courts claims based on copying policies, legal research policies and his lack of reading glasses. (Claims # 16—# 21 and # 37).

In *Bounds v. Smith, supra,* the Supreme Court held that the "fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 829, 97 S.Ct. 1491; *Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851, 855 (9th Cir. 1985) (expressly adopting *Bounds* recognition of alternative means to meet due process requirement of access to the courts).

The objective of the Supreme Court's access requirements was to remove barriers to court access that imprisonment or indigency erected, not to grant to inmates advantages not shared by the general unimprisoned public. *Hooks v. Wainwright,* 775 F.2d 1433, 1436–37 (11th Cir.1985), *cert. denied,* 479 U.S. 913, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986). Accordingly, courts have with near unanimity rejected claims for free photocopying, typewriters, carbon paper and other ancillary supplies. Prison officials may not, of course, actively impede an inmates access to courts by failing to file his complaints or by confiscating directly relevant material, *Vigliotto v. Terry,* 873 F.2d 1201 (9th Cir. 1989), but their affirmative obligations end when a law library and basic supplies are afforded.

In *Sands v. Lewis,* 886 F.2d 1166, 1171 (9th Cir.1989), the Ninth Circuit adopted a unified approach to assessing right of access to the courts claims. The court held: "We now explicitly adopt the Third Circuit's approach to right of access claims". Under that analysis, a court must first determine whether the right of access claimant alleges inadequate law libraries or alternate sources of legal knowledge (citations omitted) That is, whether the claimant alleges a denial of adequate law libraries or adequate assistance from persons trained in the law. *Bounds,* 430 U.S. at 828, 97 S.Ct. 1491. Second, of the claims do not involve such an allegation, the court must consider whether the plaintiff has alleged an actual injury to court access. An actual injury consists of some specific instance in which an inmate was actually denied access to the courts. * * * Only if some actual injury is alleged does a plaintiff state a claim for which relief can be granted. On the other hand, if one of the core requirements under *Bounds* is involved, the adequacy of either law libraries or legal assistance, then there is no

actual injury requirement. *Sands v. Lewis, supra,* at p. 1171; *see also, Vandelft v. Moses,* 31 F.3d 794 (9th Cir.1994).

■ Jail authorities are not under any affirmative constitutional obligation to assist inmates in general civil matters. *Bounds v. Smith, supra; see also, Carper v. DeLand,* 54 F.3d 613. 616–617 (10th Cir.1995) (state not required to provide access to courts for general civil matters); *Schrier v. Halford,* 60 F.3d 1309, 1314 (8th Cir.1995) (no right of access to the courts for legal actions other than those recognized in *Bounds,* habeas corpus petitions, conditions of confinement complaints or to defend a criminal matter).

■ For criminal, habeas corpus[2] and conditions of confinement cases, *Bounds* requires prison officials to provide legal research resources, or legal assistance such as a knowledgeable librarian or law clerk. Officials must also provide photocopying when the plaintiff is obliged to provide copies in connection with the rights of action recognized under *Bounds. Allen v. Sakai,* 40 F.3d 1001, 1005 (9th Cir.1994), *amended on denial of reh'g,* 48 F.3d 1082 (9th Cir.1994), *cert. denied,* 514 U.S. 1065, 115 S.Ct. 1695, 131 L.Ed.2d 559 (1995); *Canell v. Bradshaw,* 840 F.Supp. 1382, 1392 (D.Or.1993).

■ In addition, jail authorities are not required to supply legal resources and supplies to inmates who are represented by counsel. *Keenan v. Hall,* 83 F.3d 1083, 1093 (9th Cir.1996) ("Inmates have a constitutional right to either assistance of a lawyer, or access to a law library"). Where required, legal resources need only be provided in the preparation of initial pleadings. *Bounds, supra; Cornett v. Donovan,* 51 F.3d 894 (9th Cir.1995).

■ Based on the foregoing, plaintiff's Claim # 37 fails as a matter of law because it specifically concerns plaintiff's pursuit of "civil cases" for which there is no constitutional right of access. Similarly, plaintiff's Claims # 17, # 18 and # 21 specifically concern litigation of general civil matters.[3] Plaintiff's denial of access claims fail to the extent they arise out of his prosecution on criminal charges because he was represented by counsel in those matters.

To the extent plaintiff's claims are based on denial of access in regard to his pursuit of conditions of confinement litigation, including the present case, plaintiff's claims fail because he has failed to demonstrate any actual injury. *Lewis v. Casey,* 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Plaintiff was able to initially file this action and file three lengthy amended complaint, successfully defend a counter-claim, conduct discovery, file numerous motions and briefs including a voluminous response to defendants' motion for summary judgment. Plaintiff has failed to demonstrate any actual injury resulting from the circumstances he alleges constituted denial of access to the courts, specifically the alleged refusal to copy legal documents, Claim # 16.

■ *Lockbox Claim:* Plaintiff's Claim 31 alleges that he was denied equal protection because defendants provide lock-boxes and drawers for inmates at MCJI and the Multnomah County Corrections Farm (MCCF) to store their personal property but do not provide similar accommodations to inmates at MCDC. Plaintiff alleges that this failure led to the destruction of legal

---

2. Plaintiff has not alleged denial of access with respect to any proceeding for habeas corpus relief.

3. Moreover, plaintiff "failure to read document" claims # 17 and # 18 cannot reasonably be construed as a denial of access to the courts claim. Nor can his failure to provide reading glasses Claim # 19.

papers while he was housed at MCDC. Plaintiff dos not allege that he suffered any personal injury as a result of not having a lock-box. To the extent this claim can be construed as affecting plaintiff's access to the courts, it fails for the reasons discussed above. Accordingly, plaintiff's lock-box claim is essentially a loss of property claim.

 If an adequate post-deprivation remedy is available for a loss of property, no constitutional claim may be made. *Hudson v. Palmer*, 468 U.S. 517, 533–535, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In this case the Oregon Tort Claims Act constitutes an adequate state court remedy for plaintiff's property loss claim.

Moreover, the undisputed facts of record clearly demonstrate that lock-boxes are not permitted at MCDC due to legitimate, non-discriminatory reasons related solely to safety and security. Accordingly, plaintiff's equal protection claim based on denial of access to a lock-box fails as a matter of law.

***Reading Glasses Claim:*** Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs because they did not provide him with reading glasses (Claim 15) and because Multnomah County charged him for medical services (Claim 32). Plaintiff also alleges that the county's practice of charging for medical services constitutes racketeering.

 An Eighth Amendment claim based on failure to provide medical services requires deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or "unnecessary and wanton infliction of pain." *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir.1994).

 The record reflects that plaintiff does not have serious vision problem. While severe eye injuries or legal blindness may constitute a serious medical need, that is not the case with reading glasses. *See, Franklin v. State of Oregon*, 662 F.2d 1337 (9th Cir.1981); *see also, McMillen v. Fairman*, 1997 WL 603853, *3. Plaintiff allegation that he had headaches does not demonstrate a serious medical need. *See, O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir.1990).

 Plaintiff claim that charging inmates with ability to pay for medical services violates the Eighth Amendment fails to state a claim because he has not alleged that he had any serious medical need that went untreated.

 Moreover, it is constitutionally acceptable to charge inmates a small fee for health care where, as here, indigent inmates are guaranteed service regardless of ability to pay. *Gardner v. Wilson*, 959 F.Supp. 1224, 1228 (C.D.Cal.1997).

Plaintiff's claim that defendant violated an Oregon racketeering statute fails for a number of reasons including the fact that plaintiff has not and cannot allege that defendants' conduct constituted a crime. *See*, ORS 166.715(6)(a).

In plaintiff's Statement of Facts he alleges that defendants violated the Americans With Disabilities Act (ADA) by not providing him with reading glasses.

 In order to state a claim under the ADA, plaintiff must demonstrate that: 1.) he is a qualified individual with a disability; 2.) he was denied benefits of a public entity's services, programs or activities; and 3.) such denial of benefits was because of his disability. 42 U.S.C. § 12132; *Weinreich v. Los Angeles*, 114 F.3d 976, 978 (9th Cir.1997), *cert. denied*,

522 U.S. 971, 118 S.Ct. 423, 139 L.Ed.2d 324 (1997).

■ Plaintiff has not made a *prima facie* showing of *any* of the required elements and his ADA claim fails as a matter of law. The most formidable obstacle to plaintiff's ADA claim is that he is not disabled. The "disability" that is the basis for his claim is the need for a slight vision correction for reading. Plaintiff has not established that he suffers from an impairment that substantially limits at least one major life activity. 42 U.S.C. § 12102(2). Moreover, he has not been denied access to or the benefit of any public program. Plaintiff claims to have been unable to use the law library to research printed materials. Plaintiff's claim in this regard is contradicted by his prolific legal output and the undisputed fact that he was a frequent and regular user of defendants' law library.

*Manual Labor Claims:* In Claims 34 and 35 (and also in plaintiff Statement of Facts # 161–# 167) plaintiff alleges that being required to clean chairs for 45 minutes violated his Fourth, Eighth, Thirteenth and Fourteenth Amendment rights.

■ Compelling an inmate to clean his surroundings is permissible as a matter of law and does not implicate any due process right. *See Bijeol v. Nelson*, 579 F.2d 423, 425 (7th Cir.1978); *Hause v. Vaught*, 993 F.2d 1079 (4th Cir.1993).

■ The level of process due varies with the severity of the deprivation. Thus, where the punishment is *de minimis*, the due process requirements are correspondingly *de minimis*. *Boutchee v. Grossheim*, 11 F.3d 101, 103 (8th Cir.1993). Thus, minor discipline summarily imposed does not give rise to a due process claim. *Id.*

■ Moreover, in this case, plaintiff was afforded due process by way of the institution grievance procedure. Plaintiff filed a grievance to which defendant Leger responded. Plaintiff appealed the response. Plaintiff's appeal went unanswered because he was released before the answer was due. I find in view of the *de minimis* level of discipline imposed, the level of due process afforded was constitutionally adequate.

■ Washing chairs for 45 minutes does not even approach the level of wanton and unnecessary infliction of pain necessary to substantiate claim under the Eighth Amendment. The Eighth Amendment clearly allows for mandatory labor for convicts. *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir.1994) (requiring an inmate to work an extra 8 hour shift does not violate the Eight Amendment). In order to constitute cruel and unusual punishment, plaintiff must show that he was required to work beyond his strength, that he risked his life, or health or suffered undue pain. *Id.*

■ Plaintiff's claim fails under the Thirteenth Amendment because the Thirteenth Amendment expressly creates an exception for the prison context. "Neither slavery nor involuntary servitude, *except as punishment for crime whereof the party shall have been duly convicted,* shall exist within the United States, or any place subject to their jurisdiction." Accordingly, convicted criminals are not protected by the Thirteenth Amendment against involuntary servitude. *Hale v. State of Arizona*, 993 F.2d 1387, 1394 (9th Cir.1993), *cert. denied*, 510 U.S. 946, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993).

*Transfer Claims:* Plaintiff alleges that defendant Yon violated his rights under the First and Fourteenth Amendments by "updating" his custody classification so that he was moved from a drug treatment program into transitional housing. (Claims # 9—# 14). Plaintiff alleges that

he was updated in retaliation for filing a grievance against defendant Yon. Plaintiff alleges that defendants Noelle and Bishop were deliberately indifferent to defendant Yon's retaliation.

The record reflects that defendant Yon believed that plaintiff had been disturbing the special IJIP environment, which consists of group therapy and other activities to help inmates turn their lives around and become addition free. It was defendant Yon's conclusion that plaintiff was "Not IJIP material," as he noted in the update form.[4] The update recommendation was reviewed and approved by Sergeant Katafias, and plaintiff was moved by classification staff. Since the "update" was not a disciplinary action, it had no adverse impact on plaintiff sentence.

■ The procedural guarantees of the Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. See, Ingraham v. Wright, 430 U.S. 651, 672, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ The federal constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status "as long as the challenged conditions or degree of confinement ... is within the sentenced imposed ... and is not otherwise violative of the Constitution." Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); see also, Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Thus, "as far as the federal constitution is concerned, the security and custody classification of state prison inmates is a matter for state

prison-official discretion whose exercise is not subject to federal procedural due process constraints." Slezak v. Evatt, 21 F.3d 590 (4th Cir.1994); see also, Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) [prison officials are to be accorded a wide range of deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security]; Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); Frost v. Agnos, 152 F.3d 1124 (9th Cir. 1998).

■ Plaintiff is not constitutionally entitled to any particular custody classification. Therefor plaintiff's allegations fail to state a Fourteenth Amendment due process claim.

Plaintiff alleges that his transfer violated the First Amendment because it was done in retaliation for threatening to file a grievance.

The nature of a retaliation claim requires that it be "regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Adams v. Rice, 40 F.3d 72, 74 (4th Cir.1994).

The Ninth Circuit requires as predicates for a viable retaliation claim, that the plaintiff allege both "that the type of activity he engaged in was protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity." Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir.1985). The plaintiff must also demonstrate that the prison authorities' alleged retaliation action did not advance legitimate goals of the correctional institution, Id., and that the

---

4. Plaintiff admits that he did not have a drug or alcohol problem. Therefore his "transfer claims" cannot reasonably be construed as being based on loss of medical treatment or rehabilitation services.

plaintiff was injured by the retaliation. *Barnett v. Centoni*, 31 F.3d 813, 815–815 (9th Cir.1994); *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir.2000).

Plaintiff cannot state a First Amendment claim based on alleged retaliation for filing a grievance when the underlying grievance is frivolous. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000); *Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir.1997). Moreover, an inmate may be transferred for filing a frivolous grievance or lawsuit. *Rouse v. Benson*, 193 F.3d 936, 941 (8th Cir.1999); *Sterling v. Wood*, 68 F.3d 1124, 1126 (8th Cir.1995).

In this case, plaintiff alleges he was moved for filing a grievance complaining that his non-legal mail was not hand delivered to him. I find that such a frivolous complaint cannot give rise to a First Amendment claim.

Moreover, plaintiff bears the burden of proving that the allegedly retaliatory action did not advance legitimate penological goals. *Pratt v. Rowland*, 65 F.3d 802 (9th Cir.1995) (Plaintiff must show that there were "no legitimate correctional purposes motivating the actions he complains of").

In this case, defendant Yon reasonably believed that plaintiff's behavior was disruptive and not conducive to the orderly and successful operation of the IJIP. Accordingly the transfer had a legitimate correctional purpose.

Lastly, plaintiff has failed to establish any harm or injury from the transfer he complains of. As discussed above, none of defendants' alleged actions have had a demonstrative "chilling" of plaintiff's First Amendment freedoms. Plaintiff has not alleged any other cognizable injury as a result of the transfer. Removal from IJIP merely laced plaintiff back in the mode of confinement he would ordinarily expect.

Indeed, the record suggests that plaintiff *should* have been moved out a week earlier as he had already overstayed the two week treatment plan.

***Retaliation Counter-claim Claims:*** As noted above, Multnomah County filed a counter-claim in this matter to recover the cost of plaintiff's incarceration. On April 10, 2000, defendants' motion for voluntary dismissal of the counterclaim was allowed.

In claims # 1, # 2, # 38 and # 39, plaintiff alleges that the defendants' counter-claims violate his due process and equal protection rights and constitute retaliation for pursuing his rights under the First Amendment.

In general, an issue becomes moot when the parties lack a legally cognizable interest in the outcome. *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). The basic question in determining mootness is whether there is a present controversy to which effective relief can be granted. *Independent Union of Flight Attendants v. Pan American World Airways*, 966 F.2d 457, 459 (9th Cir.1992).

Here, plaintiff's retaliation claims are moot because defendants voluntarily dismissed their counter-claim. *See, Hammell v. Banque Paribas*, 780 F.Supp. 196, 201 (S.D.N.Y.1991).

In addition, in order to establish a viable claim of retaliation, plaintiff must demonstrate that he was injured. *Resnick v. Hayes*, 213 F.3d 443, 2000 WL 654114 (9th Cir., May 22, 2000). Where retaliation is alleged for the exercise of First Amendment rights, plaintiff must show that the First Amendment right was "chilled or infringed." *Id.*

In the present case, the undisputed facts show that plaintiff did not suffer any injury as a result of defendants' counter-claim.

He has vigorously pursued this litigation and not been deterred in any way. Plaintiff stated in his deposition that he had never even "considered" dismissing this lawsuit. He further state that the counter-claim angered him and it cost him money to have to file a motion to dismiss. However, anger does not constitute a "chilling" or infringement. Plaintiff was not injured by having to temporarily defend against the counter-claim because he was reimbursed per this Court's order for the costs he incurred.

**Summary:** Plaintiff has not alleged any facts that would support a claim under the Fourth Amendment. His Fourteenth Amendment claims based on his status as a pretrial detainee fail because it is undisputed that petitioner was not incarcerated as a pretrial detainee at any time material to his claims herein.

All of plaintiff's claims except those alleged as arising under the First Amendment fail because they do not allege a cognizable physical injury as required by the Prison Litigation Reform Act. To the extent plaintiff's allegations can be construed as satisfying the PLRA physical injury requirement, they fall considerably short of the "unnecessary and wanton infliction of pain" or "serious medical need" standards necessary to support a claim under the Eighth Amendment.

Plaintiff's access to the courts claims fail because he was either represented by counsel in the criminal matters or pursuing general civil actions for which access to the courts is not constitutionally required. To the extent plaintiff alleges claims recognized by *Bounds*, he has not demonstrated any actual injury resulting from his alleged denial of access or defendants' alleged conduct.

Plaintiff has failed to allege any of the requisite elements of a claim under the ADA. His reading glasses claims are insufficient for the lack of a serious medical need. Plaintiff chair washing claims and racketeering allegations are frivolous.

Plaintiff's claims based on being transferred out of the IJIP fail because he has no protected liberty interest in any specific custody level and no due process rights arising out of a non-punitive transfer.

Plaintiff's lock-box claims fail because he has an adequate post-deprivation remedy for any property loss he may has sustained.

Assuming *arguendo* that plaintiff's retaliation counterclaim allegations are sufficient to state a constitutional claim, any such claim has been rendered moot by defendants' voluntary dismissal of the counterclaim. Moreover, plaintiff has failed to demonstrate First Amendment chilling effect or other injury resulting form defendants' alleged retaliation.

**Conclusion:** Based on all of the foregoing, I find that there are no genuine issues of material fact remaining in this case and that defendants are entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment (# 134) is allowed. This case is dismissed.

IT IS SO ORDERED.